**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| TELESOCIAL LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC., a Delaware Corporation, and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, a Delaware General Partnership,<br><br>Defendants. | ) | No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Telesocial LLC ("Telesocial") files this Complaint for Patent Infringement and Demand for Jury Trial against Defendants Verizon Communications Inc. and Cellco Partnership, d/b/a Verizon Wireless ("Defendants" or "Verizon") and alleges as follows:

1. Telesocial is seeking to protect its valuable intellectual property from Defendants' ongoing willful infringement. Telesocial developed and patented novel technology for supporting real-time telecommunications through a mobile network. The United States Patent and Trademark Office ("USPTO") awarded Telesocial U.S. Patent Nos. 9,124,588; 9,130,950; 9,578,480; 10,743,152; 11,388,562; and 12,245,110. Exs. 1-6 (the "Asserted Patents"). Telesocial presented its ideas to Defendants and sought a partnership. Defendants chose to willfully infringe Telesocial's patents rather than enter into a partnership or take a license, necessitating this action.

## THE PARTIES

2. Plaintiff Telesocial is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business at 2855 Filbert St., San Francisco, California 94123.

3. Telesocial is the same entity as, and a continuation of, Telesocial Inc., a Delaware corporation that was the original applicant for and assignee of record of each of the Asserted Patents. On September 21, 2026, Telesocial Inc. converted to Telesocial pursuant to 6 Del. C. § 18-214. Upon that conversion, and for all purposes of Delaware law, Telesocial is deemed to be the same entity as Telesocial, Inc., the conversion constituted a continuation of Telesocial Inc.'s existence in the form of a Delaware limited liability company, and all of Telesocial Inc.'s rights, title, and interest in and to the Asserted Patents remained vested in Telesocial.

4. Defendant Verizon Communications Inc. is a corporation organized and existing under the state of Delaware, with a principal place of business at 1095 Avenue of the Americas, New York, New York 10036. Verizon Communications Inc. maintains an established place of business at 1006 E. End Blvd. N, Marshall, Texas, 75670.

5. Defendant Cellco Partnership d/b/a Verizon Wireless is a Delaware general partnership, with a principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920. Cellco Partnership d/b/a Verizon Wireless operates "Verizon Company Store" retail locations in this District, including at 500 E Loop 281, Longview, Texas 75605; 2035 N Central Expressway, Suite 620, McKinney, Texas 75070; 3113 N US Highway 75, Sherman, Texas 75090; and 1805 S Loop 288, Denton, Texas 76205.

6. Cellco Partnership d/b/a Verizon Wireless is an indirect wholly owned subsidiary of Verizon Communications Inc.

7. Each Defendant can be served with process through its registered agent, The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

8. Defendants directly or indirectly use, distribute, market, sell, and offer to sell throughout the United States, including in this District, various telecommunications products and services that infringe the Asserted Patents, including products and services that associate a user's identity on a third-party application or online platform with a device identifier, such as a Verizon-assigned telephone number, and use that device identifier in Defendants' network to set up and carry real-time communications, including traditional telephony, Voice over LTE and 5G, and Voice Over Internet Protocol ("VoIP") calls. These products and services include: (i) Verizon Mobile for Microsoft Teams ("VMMT"); (ii) Verizon Calling with Microsoft Teams; (iii) Verizon VoIP for Operator Connect, including Defendants' managed service connecting Microsoft Teams Phone to Defendants' VoIP and PSTN network through Microsoft's Operator Connect program; (iv) the Webex Cloud Communications as offered by Verizon, including Webex Calling and Webex Suite; (v) Defendants' multi-device calling functionality, by which calls to and from a subscriber's Verizon telephone number are placed and received on one or more additional devices registered to that subscriber following authentication of the subscriber's account or identity, including Wi-Fi Calling on secondary or connected devices and, for example, One Talk from Verizon and Business Digital MobileConnect; (vi) Push to Talk Plus; (vii) RCS messaging services; together with all predecessor, successor, and renamed versions of the foregoing, and the network infrastructure, provisioning systems, databases, gateways, and session border controllers, whether operated by

Defendants or by others on Defendants' behalf, that support them; and (viii) any other product, service, feature, or functionality offered, provided, operated, supported, or enabled by Defendants that implements the same or substantially similar accused functionality, including through integration with, or the embedding of calling capabilities into, any third-party unified-communications, collaboration, messaging, or social platform, or any Defendant-offered communications service or application, and that enables or supports the origination, placement, receipt, routing, or termination of voice or video calls to or from a subscriber's Verizon telephone number, account, or associated device identifier across one or more devices, networks, or applications, or communications platforms, including any successor, replacement, rebranded, or substantially similar product, service, feature, or functionality (collectively, the "Accused Technologies").

## JURISDICTION AND VENUE

9. This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 101 *et seq*. This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. This Court has personal jurisdiction over Defendants because Defendants have committed acts of infringement within this District giving rise to this action, have regular and established places of business in this District, and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

11. Defendants, directly and through subsidiaries or intermediaries, conduct their business extensively throughout Texas and in this District, by distributing, offering for sale, selling, and advertising their products and services in Texas and in this District, regularly do

business or solicit business, engage in other persistent courses of conduct, and derive substantial revenue from products and services provided to individuals in Texas and in this District, and commit acts of infringement of Telesocial's patents in Texas and in this District, including making, using, offering to sell, and selling the Accused Technologies that infringe the Asserted Patents.

12. Defendants, directly and through subsidiaries or intermediaries including distributors, retailers, and others, have purposefully and voluntarily placed the Accused Technologies into the stream of commerce with the expectation that they will be purchased and used by consumers in this District. These infringing products and services have been and continue to be purchased and used by consumers in this District. Defendants have committed acts of patent infringement within the State of Texas and, more particularly, within this District. For example, Defendants operate "Verizon Company Store" retail locations in this District, including at 500 E Loop 281, Longview, Texas 75605; 2035 N Central Expressway, Suite 620, McKinney, Texas 75070; 3113 N US Highway 75, Sherman, Texas 75090; and 1805 S Loop 288, Denton, Texas 76205, and make, use, offer for sale, and sell the Accused Technologies in this District, as further described below. *See, e.g.*, Ex. 34 (https://www.verizon.com/business/locations/tx/longview/500-e-loop-281-2245197/); Ex. 35 (https://www.verizon.com/business/locations/tx/mckinney/2035-n-central-expy-2244534/); Ex. 36 (https://www.verizon.com/business/locations/tx/sherman/3113-n-us-hwy-75-2244870/); Ex. 37 (https://www.verizon.com/business/locations/tx/denton/1805-s-loop-288-2244440/).




Ex. 38 (https://www.verizon.com/nextgendigital/nos/storelocator/searchresults?lat=32.54691&lng=-94.35011&zip=75670).

13. Venue is proper in this District under 28 U.S.C. § 1400(b) because each Defendant has committed acts of infringement in this District and has a regular and established place of business in this District. Because the second prong of § 1400(b) is satisfied, venue is proper as to Cellco Partnership, a general partnership, regardless of where it is deemed to reside. Defendants have transacted business in this District, have a regular and established place of business in this District and have infringed and induced infringement in this District and continue to do so. Defendants maintain the regular and established place of business in this District described above.

14. Telesocial is informed and believes that Defendants employ multiple personnel in this District, including personnel involved in Defendants' infringement through the testing, demonstration, support, use, offer for sale, and sale of the Accused Technologies within Texas.

15. Additionally, Defendants have submitted to venue and the exercise of personal jurisdiction in this District in patent infringement actions previously filed by other parties. *See, e.g.*, *Piney Woods Mobility LLC v. Verizon Commc'ns, Inc.*, No. 2:26-cv-00124 (E.D. Tex. Feb. 13, 2026); *Cloud Controls LLC v. Verizon Commc'ns, Inc.*, No. 2:25-cv-01249 (E.D. Tex. Dec. 23, 2025); *XR Commc'ns LLC d/b/a Vivato Techs. v. Verizon Commc'ns, Inc.*, No. 2:25-cv-00697 (E.D. Tex. July 8, 2025).

**TELESOCIAL'S ASSERTED PATENTS**

16. Telesocial is a San Francisco-based telecommunications technology company founded in 2008 with the core mission of bringing mobile voice communications to social-network and application environments and connecting applications operating on the social web with telecommunications networks. Telesocial solved a unique telecommunications problem: how to enable calls between users of social media without the need for exchanging telephone numbers. To remedy the problem, Telesocial developed technology which allows users of social networks to place carrier-based phone calls directly to other users.

17. The Asserted Patents name William L. Waytena, Jr. and Eric T. Stone as their inventors. Mr. Waytena and Mr. Stone are also the majority members of Telesocial, and Mr. Waytena is its CEO.

18. On September 1, 2015, the USPTO duly and legally issued U.S. Patent No. 9,124,588 (the "'588 Patent"), titled "Telecommunication Service Employing an Electronic Information Repository Storing Social Network User Information, Developer Information, and

Mobile Network Operator Information." Telesocial is the owner by assignment of the '588 Patent. A true and correct copy of the '588 Patent is attached hereto as Exhibit 1.

19. On September 8, 2015, the USPTO duly and legally issued U.S. Patent No. 9,130,950 (the "'950 Patent"), titled "Telecommunication Service Employing an Electronic Information Repository Storing Social Network User Information, Developer Information, and Mobile Network Operator Information." Telesocial is the owner by assignment of the '950 Patent. A true and correct copy of the '950 Patent is attached hereto as Exhibit 2.

20. On February 21, 2017, the USPTO duly and legally issued U.S. Patent No. 9,578,480 (the "'480 Patent"), titled "Telecommunication Service Employing an Electronic Information Repository Storing Social Network User Information, Developer Information, and Mobile Network Operator Information." Telesocial filed the application for the '480 Patent on August 18, 2015. A true and correct copy of the '480 Patent is attached hereto as Exhibit 3.

21. On August 11, 2020, the USPTO duly and legally issued U.S. Patent No. 10,743,152 (the "'152 Patent"), titled "Telecommunication Service Employing an Electronic Information Repository Storing Social Network User Information, Developer Information, and Mobile Network Operator Information." Telesocial is the owner by assignment of the '152 Patent. A true and correct copy of the '152 Patent is attached hereto as Exhibit 4.

22. On July 12, 2022, the USPTO duly and legally issued U.S. Patent No. 11,388,562 (the "'562 Patent"), titled "Telecommunication Service Employing an Electronic Information Repository Storing Social Network User Information, Developer Information, and Mobile Network Operator Information." Telesocial is the owner by assignment of the '562 Patent. A true and correct copy of the '562 Patent is attached hereto as Exhibit 5.

23. On March 4, 2025, the USPTO duly and legally issued U.S. Patent No. 12,245,110 (the "'110 Patent"), titled "Telecommunication Service Employing an Electronic Information Repository Storing Social Network User Information, Developer Information, and Mobile Network Operator Information." Telesocial is the owner by assignment of the '110 Patent. A true and correct copy of the '110 Patent is attached hereto as Exhibit 6.

24. The Asserted Patents are directed to patent-eligible subject matter because their claims recite specific technological mechanisms for enabling real-time communications initiated in social-network applications to be processed through mobile telecommunications-network infrastructure. The claims recite solutions to specific technical problems that arise in the integration of online social-network applications with mobile telecommunications networks, including, how to cause a communication requested through a social-network application to be set up and carried over a mobile network operator's ("MNO") infrastructure. Therefore, the Asserted Patents improve the operation of mobile telecommunication networks by enabling those networks to set up and carry real-time communications requested through social network applications.

25. At the time of Telesocial's inventions, social-network applications lacked robust functionality for providing real-time mobile telecommunications due to significant technological limitations. For example, then-existing approaches took one of two forms: either the communication was confined to a separate communication network and to endpoint devices running that network's proprietary software, or the social-network application itself had to obtain and transmit the telephone numbers needed to establish communications between users. *See, e.g.*, Ex. 2 (the '950 Patent) at 2:5-2:52.

26. Then-conventional approaches reflected a technological problem at the boundary between social-network applications and mobile telecommunications networks. Social network applications identified and connected users within an application environment by handle, such as a username or a screen name, while telecommunications networks required device and subscriber-specific information to establish and process communications through network infrastructure. As a result, the communications were limited to the application's own network and endpoints or required the application itself to supply the carrier-addressing information.

27. To solve these problems, Telesocial invented specific mechanisms for providing mobile telecommunications-network functionality to process real-time communication through the MNO's own infrastructure without requiring the social-network application itself to perform the carrier-network addressing and processing functions.

28. To provide this functionality, Telesocial's inventors developed a distinct, unconventional, and novel technological architecture. Claimed embodiments of Telesocial's telecommunications inventions permit parties to be identified to the telecommunications service by their social-network identifiers, such as a username, screen name, email address, or other handle. According to certain embodiments, an electronic information repository stores a user identifier together with at least one device identifier associated with a social-network user, such as a mobile telephone number. Ex. 2 (the '950 Patent) at 2:66-3:25. In certain embodiments, the device identifier is stored through a registration process that verifies the user's possession of the identified device by a communication loop between the service and that device. *Id.* at 3:12-3:25. When a social-network application issues a request that identifies the parties by their user identifiers, the service retrieves the corresponding device identifiers

from the repository and uses them to initiate the requested communication with each party's device. *Id.* at 3:27-3:45. In certain embodiments, calling-agent functionality of a softswitch exchanges call-setup signaling (e.g., SIP) carrying the retrieved telephone number with the call-setup function of each party's MNO, the MNO allocates network resources for each leg of the call, and the softswitch bridges the legs into an end-to-end connection. *Id.* at 9:1-10:34, 12:43-12:53. The result is a real-time communication carried over the MNO's infrastructure between the parties' devices. *See, e.g.*, *id.* at 3:46-3:53, 9:22-9:27.

29. As set forth in the Asserted Patents' specifications and variously recited in the Asserted Patents' claims, Telesocial's inventions provide concrete mechanisms for implementing the interactions between social-network applications and telecommunications networks. According to certain embodiments, access logic provides controlled access to an electronic information repository by different participants, including social-network users, application developers, and MNOs. The information repository can be implemented using an SQL database system with differentiated tables, views, and access permissions, and the access logic converts information requests into database queries and returns the responsive stored information. *See, e.g.*, Ex. 2 (the '950 Patent) at 7:5-8:48. The Asserted Patents' claims variously recite further operations in which the retrieved information is used to set up and carry out the requested real-time communication. In response to a message relating to a real-time communication, certain claims require querying the repository, retrieving the stored device identifier, and communicating to at least one gateway of the MNO information, or a generated message, that includes the retrieved device identifier, which the MNO gateway then uses in carrying out the real-time communication. *See, e.g.*, Ex. 6 (the '110 Patent), Claim 1; Ex. 4 (the '152 Patent), Claim 1; Ex. 5 (the '562 Patent), Claim 1. In certain claims, the MNO

gateway uses the retrieved device identifier to ring or announce the real-time communication on the corresponding device, or to provision a connection or communication session that carries traffic for the real-time telecommunications. *See, e.g.*, Ex. 6, Claims 12-13; Ex. 4, Claims 13-14; Ex. 5, Claims 13-14. In certain claims, additional information about the social-network user, such as location information or information identifying the social-network application, is also supplied to and used by the MNO gateway in carrying out the real-time telecommunication and, in certain claims, location information is used to selectively authorize or reject the communication. *See, e.g.*, Ex. 6, Claims 3-6; Ex. 4, Claims 2-3, 5; Ex. 5, Claims 2-3, 5. In certain claims, stored user data, such as calling-rules data, or whitelist is queried to selectively authorize the real-time telecommunication. *See, e.g.*, Ex. 6, Claim 7; Ex. 4, Claims 6-7; Ex. 5, Claims 6-7. Certain claims further recite generating the message to the MNO gateway in response to a request initiating the communication and including in it application-identifying information or data the MNO uses for accounting purposes in billing the communication; using application-identifying information at the MNO gateway to administer the subscriber's MNO plan; and messages generated by the MNO gateway (in certain claims, sent to the softswitch in reply to a message initiating the communication) that indicate authorization or denial of that particular communication, provide parameters for setting it up, or provide rate information for it. *See, e.g.*, Ex. 1 (the '588 Patent), Claims 10, 17-18; Ex. 3 (the '480 Patent), Claims 11, 19-20; Ex. 2 (the '950 Patent), Claims 1, 7-9. Certain claims also specify how the stored device identifier is established, through a registration process that authenticates the user and verifies possession of the device by communication to or from it, including by SMS message, a message to an assigned short code, or an authentication code delivered by interactive voice response. *See, e.g.*, Ex. 6, Claims 14-15; Ex. 4, Claims 15-20;

Ex. 5, Claims 15-20. The specifications describe embodiments of these operations. *See, e.g.*, Ex. 2 (the ’950 Patent) at 8:49-8:67, 10:35-12:67, 19:25-21:41.

30. Embodiments of Telesocial’s inventions also provide mechanisms for establishing and maintaining the associations between social-network users and their telecommunications devices, a technique not known in the conventional art at the time of the inventions. The disclosed systems can also address reassignment of a mobile telephone number by verifying the current association and correcting stored user information. *See, e.g.*, Ex. 2 (the ’950 Patent) at 20:31-67. Telesocial’s architectures also afford improvements in the security and privacy of that information, which is a benefit of the claimed technological solution.

31. The ’110, ’152, and ’562 Patents each claim particular implementations of Telesocial’s technological solutions. Some of the claims variously require an information repository storing a device identifier associated with a particular device of a social-network user having an MNO plan, with the device identifier stored in response to a registration process that authenticates the social-network user. In response to receiving a message relating to a real-time telecommunication involving that user, certain of the claimed methods require querying the repository and retrieving the device identifier, communicating information containing the retrieved device identifier to an MNO gateway, and using the retrieved identifier at the MNO gateway in carrying out the real-time telecommunication. *See, e.g.*, Ex. 6 (the ’110 Patent), Claim 1.

32. The ’152 and ’562 Patents further claim related implementations, in which, in response to a message from the user device of the social-network user initiating the communication, the repository is queried and the stored device identifier of the intended

recipient ('152 Patent) or of the initiator ('562 Patent) is retrieved and supplied to the MNO gateway for use in carrying out the communication. *See* Ex. 4 (the '152 Patent), Claim 1; Ex. 5 (the '562 Patent), Claim 1. Certain dependent claims further require querying the repository using the social-network username included in the received message. *See, e.g.*, *id.*, Claim 8.

33. According to certain embodiments, the claimed repository is functionally tied to the processing of real-time communication: receipt of the communication-related message triggers retrieval of the particular device identifier, and the resulting identifier is then supplied to and used by MNO gateway functionality in carrying out that communication. Various claims thus recite an ordered network-processing sequence connecting authenticated storage of device-identifying information, event-responsive retrieval of that information, and its use by carrier-network infrastructure.

34. The '588 and '480 Patents variously claim complementary service-side implementations. Their claims recite, for example, a method carried out by a softswitch (and a corresponding apparatus) that receives a request to initiate real-time communication involving a social-network user and generates a message to an MNO gateway that includes a device identifier together with additional data. According to certain claims, that additional data includes information identifying the social-network application from which the real-time communication request was initiated or is used by the MNO for accounting purposes in billing the real-time communication. Ex. 1 (the '588 Patent), Claim 1, 10; Ex. 3 (the '480 Patent), Claims 1, 11. These claims variously require generating and delivering to carrier-network infrastructure specific combinations of device-identifying and application- or accounting-related information for use in processing the communications.

35. The ’950 Patent claims inventions for additional technological aspects of the integration between social-network applications and mobile telecommunications networks. For example, Claim 1 requires an MNO gateway having a communication interface that receives a message relating to a real-time communication request. The message contains information about a social-network user having a plan with an MNO, including a device identifier and additional data identifying the social-network application from which the communication request originated. The claimed gateway further provides functionality that uses that additional data in administering the MNO plan associated with the social-network user. Ex. 2 (the ’950 Patent), Claim 1.

36. According to certain embodiments, the application-identifying information is an operative input to MNO-side processing of real-time communication. The claimed gateway receives that information as part of the communication-related message and uses it in administering the particular subscriber plan associated with the social-network user. In this manner, the MNO network processes communications according to the device subscriber, and social-network application from which the communication originated.

37. The Asserted Patents are therefore directed to specific improvements in the interaction between social-network applications and telecommunications-network functionality. As a result, and as explained above, the claims of the Asserted Patents recite particular technological interactions between information originating in the social-network environment and functionality of the mobile telecommunications network. As a result, and as explained above, the Asserted Patents’ inventions are not the routine or conventional use of generic computers, databases, or telecommunications equipment. These claimed arrangements were not well-understood, routine, or conventional, and they address identified technological

limitations of then-existing social-network telecommunications approaches and provide specific mechanisms for integrating social-network applications with mobile telecommunications infrastructure.

38. These claimed improvements are rooted in the operation of telecommunications systems and networks. The Asserted Patents' inventions reside in the particular, claimed arrangements and interactions among social-network information, device information, communication requests, repositories, and MNO gateway functionality. Viewed individually and as ordered combinations, the claims recite specific technological implementations for enabling social-network communications to operate through mobile telecommunications infrastructure in ways that conventional approaches did not.

39. Finally, the claims are directed to specific technological techniques and do not preempt social-network communications or telecommunications generally. Numerous alternative approaches remain available.

**<u>COMPLIANCE WITH THE MARKING STATUTE – 35 U.S.C. § 287</u>**

40. Telesocial has at all times complied with the marking statute (35 U.S.C. § 287).

41. Telesocial has not licensed any of the Asserted Patents.

42. The claims of the '152 Patent, '562 Patent and '110 Patent are limited to method claims and, therefore, are not subject to 35 U.S.C. § 287.

43. With respect to the '588 Patent, since September 1, 2015, the date that the patent issued, Telesocial has not offered for sale, sold, or licensed any products that embody any claim of the patent.

44. With respect to the '950 Patent, since September 8, 2015, the date that the patent issued, Telesocial has not offered for sale, sold, or licensed any products that embody any claim of that patent.

45. With respect to the '480 Patent, since February 21, 2017, the date that the patent issued, Telesocial has not offered for sale, sold or licensed any products that embody any claims of that patent.

46. Thus, Telesocial's recovery of pre-suit damages for Defendants' infringement of the Asserted Patents is not limited by 35 U.S.C. § 287(a) as to any Asserted Patent.

## DEFENDANTS' ACCUSED TECHNOLOGIES

47. Defendants make, use, sell, and offer for sale in the United States, the State of Texas, and this District, various products and services that infringe the Asserted Patents, including the Accused Technologies.

48. Defendants are American multinational telecommunications companies known for supporting real-time telecommunications. Defendants are mobile network operators that allows their customers to place live calls via traditional telephony or VoIP calls and real-time data transmissions via their network infrastructure. Defendants offer a range of products, including the Accused Technologies, to help provide secure, unified communication services. For example, the Accused Technologies infringe the Asserted Patents through the same or similar components as described further below.




Ex. 7 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/) (Verizon's calling solution for Microsoft Teams).




Ex. 8 (https://www.verizon.com/business/products/voice-collaboration/webex-cloud-communications/) (Verizon's Webex Cloud Communications is a "centralized, cloud-based solution for reliable, streamlined communications.").

Push to Talk Plus is a mobile app for instant, reliable communications to a single contact or group with the simple push of a button.



**Connect to multiple devices**

Push to Talk Plus connects you to contacts who may be using a different device, including basic phones, smartphones, tablets and land mobile radios (LMRs). It uses the Verizon network or Wi-Fi to ensure reliable calling.

Employees can communicate to a single contact, collaborate with a group or broadcast across your company.

Push to Talk Plus works on dozens of devices, including basic devices, a variety of Android® and Apple® iOS smart devices, and popular connected iPad® and Samsung® tablets.

**Share more data**

Advanced Push to Talk capabilities enable users to share texts, photos, videos, alerts, location data, voice messages and documents. The data is stored in one place, making it easy to find, enhancing both productivity and collaboration.

Ex. 9 (https://www.verizon.com/business/products/voice-collaboration/push-talk-plus/) ("Push to Talk Plus connects you to contacts who may be using a different device, including basic phones, smartphones, tablets and land mobile radios (LMRs). It uses the Verizon network or Wi-Fi to ensure reliable calling.").

49. Verizon Calling with Microsoft Teams is a Microsoft Teams Direct Routing service. According to Defendants, "Verizon's product enables Microsoft Teams Direct Routing for calling outside your Teams environment," and "[t]he service includes a Session Border Controller as a Service product that can be configured by Verizon for secure interconnectivity and needed translation for SIP connectivity between existing systems and Microsoft Teams Phone." Ex. 10 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/enterprise-calling/). The service uses Defendants' "SIP trunking and network services," and customers' telephone numbers are migrated "from the existing Verizon service" and assigned to Microsoft Teams users. *Id.* On information and belief, Defendants associate each enabled Microsoft Teams user's identity with a Verizon-provisioned telephone number, and Defendants' session border controllers and network gateways use that number to route calls to and from the VMMT user.

50. Defendants also offer Webex Cloud Communications, including Webex Calling, which "provides a complete set of business calling and unified collaboration features." Ex. 8 (https://www.verizon.com/business/products/voice-collaboration/webex-cloud-communications/). Under Defendants' service terms, a Webex Calling customer is "required to separately purchase a sufficient amount of PSTN trunk capacity from Verizon," and Defendants provision the "network-based features" of the service. Ex. 11 (Verizon Service Guide, Webex Calling (Apr. 15, 2024), §§ 1.2.1, 5.5, https://www.verizon.com/business/service_guide/reg/webex_calling_2024APR15_mk.pdf). On information and belief, each Webex user is identified by a Webex identity that is associated with a telephone number provisioned through Defendants after the user is authenticated, and Defendants' network gateways use that number to set up and carry calls placed to and from the Webex user.

51. Push to Talk Plus is "a mobile app for instant, reliable communications to a single contact or group" that "uses the Verizon network or Wi-Fi." Ex. 9 (https://www.verizon.com/business/products/voice-collaboration/push-talk-plus/). Push to Talk Plus users are identified to one another through contacts and groups that Defendants' online tools push to "all assigned PTT+ devices." Ex. 12 (https://www.verizon.com/business/resources/solutionsbriefs/push_to_talk_plus_overview_sb.pdf). On information and belief, Defendants' Push to Talk Plus servers store the association between each Push to Talk Plus user and that user's device identifier following activation and authentication of the user, retrieve the device identifiers of the called contact or group members when a push-to-talk call is initiated, and use those identifiers in Defendants' network to set up and carry the call.

52. For purposes of illustration, the infringement allegations below describe VMMT. On information and belief, each of the other Accused Technologies includes the claimed elements and performs the claimed steps in the same or a substantially similar manner because each associates a user's identity on a third-party application or platform (e.g., VMMT, Webex, Push to Talk Plus, or another online platform or account) with a device identifier stored by or for Defendants following authentication of the user, retrieves that device identifier in response to a message relating to a real-time communication, and uses that device identifier in Defendants' network gateways to set up and carry the communication.

53. VMMT integrates Verizon's mobile calling network with Microsoft Teams as a collaboration environment and social network, delivering a native, seamless, mobile-first calling experience on a user's mobile device. *See* Ex. 13 (https://support.microsoft.com/en-us/teams/free/communities/create-a-community-and-channel-in-microsoft-teams-personal) (describing Communities and channels in Teams used to "make it easier for community members to find updates and information," as well as "post updates, changes, or other important information for members of your community"); Ex. 14 (https://www.microsoft.com/en-us/copilot/blog/2016/11/02/introducing-microsoft-teams-the-chat-based-workspace-in-office-365/) ("Microsoft Teams is an entirely new experience that brings together people, conversations and content—along with the tools that teams need—so they can easily collaborate to achieve more," and creates "a more open, digital environment that makes work visible, integrated and accessible—across the team.").

## Social interactions and personal apps

Teams acts as a social platform where custom apps help extend company culture. Personal apps use conversational bots for direct user interaction, and task modules (dialogs) make complex data easy to manage.

Ex. 15 (https://learn.microsoft.com/en-us/microsoftteams/platform/overview) ("Teams acts as a social platform where custom apps help extend company culture.").




Ex. 14 (https://www.microsoft.com/en-us/microsoft-365/blog/2016/11/02/introducing-microsoft-teams-the-chat-based-workspace-in-office-365/).

54. VMMT includes an enterprise social network platform. For example, Microsoft Teams offers the Viva Engage (formerly, Yammer) service which allows VMMT users to facilitate employee connection and communication. *See* Ex. 16 (https://learn.microsoft.com/en-us/viva/engage/overview) ("Viva Engage is part of the Microsoft Viva employee experience platform built within Microsoft 365 and Microsoft Teams. The Viva suite of apps gives you the ability to support connection, insight, purpose, and growth in your organization using your existing infrastructure.").

55. Verizon manages and supports call routing on VMMT by providing, directing, and controlling call routing to Microsoft, operated on a Verizon enabled calling device.

> ### 4. Verizon Mobile for Microsoft Teams Management and Support.
>
> **Verizon Management**. Verizon will manage and support call routing into our platform, to Microsoft, and to the PSTN as needed for external termination. Verizon will provide appropriate administration tools to allow you to add or remove the feature from your Verizon line and to understand the feature routing status for each provisioned line. Verizon will communicate with Microsoft to send the telephone numbers assigned by you to Microsoft. Verizon will route calls to Microsoft once configuration is completed in Microsoft Teams to allow successful calling.
>
> **Microsoft Management**. Microsoft is responsible to handle active calls once sent by Verizon and to apply any call treatments based on current Microsoft Teams PBX call configurations established by you. Microsoft is solely responsible for any voice mail or call recording as is set in the Microsoft Teams platform. All Microsoft Teams phone or device apps are managed and controlled exclusively by Microsoft. All licensing for feature management is similarly managed and controlled by Microsoft with capabilities available per your Microsoft Teams licensing agreements.
>
> **Calling Plan Options: Primary vs Secondary.** Verizon Mobile for Microsoft Teams operates on either a primary line enabled for the Verizon smartphone or a secondary eSIM plan and is available with and without data (calling and SMS only). Enabling Verizon Mobile for Microsoft Teams on a secondary eSIM plan allows the customer to use their own Device (BYOD) and comes with added customer requirements. The given device must support eSIM, Dual SIM, and must be unlocked by the primary line carrier. The end user must configure their device settings as follows: Activate/allow cellular data switching; and Activate WiFi calling on the secondary number.

Ex. 17 at 1-2 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/) (describing Verizon's management, direction, and control of Microsoft to provide VMMT).

56. VMMT enables users to place and receive calls across multiple devices, so that a call started on a desktop or laptop can continue to a smartphone or tablet. This service is seamless across device types, including smartphones, tablets, and desktops.

Empower mobile, frontline and hybrid workforces with a mobile-first Microsoft Teams® calling experience using the native dialer or keypad on their Verizon mobile device.



**Call**

Teams calls ring simultaneously on all devices.

**Answer**

Answer calls easily on your mobile phone —turning it into a Teams endpoint.

**Collaborate**

Seamlessly uplift mobile calls from the smartphone's keypad to Teams, without dropping the call, for easy collaboration.

*See, e.g.*, Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/).

# Verizon Mobile for Microsoft Teams unifies communications

Like many organizations, MFHS began using Microsoft Teams at the beginning of the pandemic, so MFHS employees were familiar with features like team video calls and chat. MFHS also had 100 Verizon devices deployed, with more requested. Verizon proposed a mobile-first solution. Verizon Mobile for Microsoft Teams (VMMT) would integrate external calling into the existing MFHS Teams environment.

With VMMT, each MFHS employee is reachable via one mobile phone number running on the Verizon 4G/5G voice network. This single number simplicity was a game changer. Now everyone in the organization can communicate via Teams wherever they are, whether that's in the new Scranton location, visiting Northeastern Pennsylvania as part of the mobile Women, Infants and Children (WIC) unit or paying a visit to a new mother on behalf of the Nurse Family Partnership (NFP) program.

Once MFHS decided to move forward with VMMT, implementation went fast.

"So now you take our best-in-class wireless network and connect it to Microsoft Teams, and you add calling to a solution they already know how to manage," said Henry Mues, Microsoft Teams Specialist at Verizon. Montigney added, "We got on a call with Henry. He basically shared our screen and walked us through how to set up a site, step by step. We were able to implement a simple location within 10 to 15 minutes from start to finish."

Verizon was the first operator to offer Microsoft Teams Phone Mobile in the United States. MFHS benefited from early access to a completely unified communications and mobile-first calling solution, running on a best-in-class nationwide wireless network. And with quick access to new features, MFHS can stay up to date on the latest collaboration and communication technology.

Ex. 19 at 2 (https://www.verizon.com/business/resources/customer-success-stories/connecting-maternal-and-family-health-services/).

57. Defendants "provide switched access services that allow carriers to complete their end-user calls that originate or terminate within [their] territory. In addition, [Defendants] provide originating and terminating voice services throughout the U.S. and globally utilizing [their] time-division multiplexing and Voice over Internet Protocol (VoIP) networks." *See* Ex. 20, Verizon 2024 10-K at 7, 9 (https://www.sec.gov/ix?doc=/Archives/edgar/data/0000732712/000073271225000006/vz-20241231.htm); Ex. 21, Verizon 2025 10-K at 13

(https://www.sec.gov/Archives/edgar/data/732712/000073271226000007/vz-20251231.htm) ("Verizon offers many different wireline voice services, including traditional telephone service and other services that rely on technologies such as VoIP."). Defendants "sell network access to mobile virtual network operators (MVNOs) on a wholesale basis, who in turn resell wireless service under their own brand(s) to consumers."

58. Defendants partnered with Microsoft to offer VMMT. *See* Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/). VMMT includes a mobile-integrated unified communications service that allows a user's native mobile number from Verizon to be fully integrated with VMMT, enabling calling, voicemail, and other communication features across both the mobile network and Microsoft Teams interface. *Id.*

59. VMMT integrates and provisions subscribers' native Verizon mobile numbers with Microsoft Teams, enabling the subscribers to place and receive calls through the Teams application, an integrated IP phone, or the native dialer on the subscribers' mobile device. *See* Ex. 18 at 3 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) ("Make and receive calls outside your organization via the smartphone's keypad or Teams endpoints using a single Verizon business-provided mobile number.").

A Teams voice solution enables people in your organization to make calls both within and outside your organization. A complete voice solution consists of Teams, Microsoft Phone System, and a choice of options for connecting to the Public Switched Telephone Network (PSTN).




Ex. 22 (https://learn.microsoft.com/en-us/previous-versions/microsoft-365/solutions/deploy-voice).




Ex. 23 at 1 (https://learn.microsoft.com/en-us/microsoftteams/pstn-connectivity).

60. Prior to October 30, 2025, the Verizon-Teams integration was done via

Microsoft's Azure Communications Gateway ("ACG"). *See* Ex. 24 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/role-in-network) ("[ACG] sits at the edge of your network. This position allows it to manipulate signaling and media to meet the requirements of your networks and your chosen communications services.").

61. In addition, Defendants' carrier-side ISC GW and Session Border Controller ("SBC"), together with associated IMS and application-server gateway functionality, are accused as the claimed MNO gateway to support the integration for the telecommunications.

62. Microsoft retired ACG on October 30, 2025, and directed customers to transition to another Microsoft Teams Direct Routing-certified SBC before that date. *See* Ex. 25 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/prepare-to-deploy). Post-retirement, one or more Microsoft Teams Direct Routing certified SBCs deployed by or for Defendant to replace ACG are themselves accused as the claimed MNO gateway because they perform the Session Initiation Protocol ("SIP") interconnection function within VMMT. Microsoft lists all certified SBC vendors that work with VMMT as of ACG's retirement, which perform the same functions as ACG in connection with VMMT. *See* Ex. 26 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-border-controllers).

63. Microsoft's certified SBC list for VMMT includes, but is not limited to, products from AudioCodes, Ribbon Communications ("Ribbon"), Oracle, Metaswitch, Cisco, Nokia, and Sansay. *See id.*

64. Prior to the ACG retirement, Defendants' core mobile infrastructure (including IMS, SIP, and MNO gateways) was triggered to establish a live voice session between the

communicating parties. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). Defendants provisioned the eligible Verizon lines and telephone numbers, managed and supported routing into Defendants platform, to Microsoft, and to the PSTN, and used ACG as the gateway interconnection for VMMT.

> Azure Communications Gateway sits at the edge of your network. This position allows it to manipulate signaling and media to meet the requirements of your networks and your chosen communications services (for example, Microsoft Operator Connect or Zoom Phone Cloud Peering). Azure Communications Gateway includes many interoperability settings by default, and you can arrange further interoperability configuration.

Ex. 24 at 1 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/role-in-network).



Ex. 27 at 1 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect).

65. The VMMT architecture also includes the ISC GW (SBC) inside the operator mobile core. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). The ISC GW connects by SIP between the operator's IMS core and Microsoft Phone System through ACG. Thus, Defendants' carrier-side ISC GW/SBC provides an additional MNO-gateway mapping for the same signaling path within VMMT. *See* Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point).

66. The ISC GW operates within a larger system that supports telecommunication functions, including VoLTE calling, SIP routing, and identity federation with external platforms like Microsoft Teams. These functions enable real-time voice communication and enterprise number provisioning. By bridging Defendants' IMS network with the Microsoft Teams ecosystem, the ISC GW supports carrier-grade calling, presence, and service provisioning for enterprise users who maintain Defendants' mobile plans.

67. After ACG's retirement on October 30, 2025, Microsoft-certified SBCs interwork with VMMT to provide the telecommunications functions. SBC certified vendors sit at the edge of the VMMT network as the "demarcation point for a SIP trunking service." Ex. 29 at 2 (https://ribboncommunications.com/company/get-help/glossary/session-border-controller-sbc). Each certified SBC vendor further provides for a softswitch function for supporting telecommunications.

68. Oracle's SBC, for example, "caches registration requests from SIP endpoints and forwards them to the appropriate softswitch or registrar in its backbone network. All

subsequent signaling between the endpoint and the backbone network is through the Oracle Communications Session Border Controller." Ex. 30 at 3 (About the SBC and SIP). The SBC and softswitch function to process the SIP INVITE message. "When the session agent element on the softswitch side of the message flow (ingress session agent) has the gateway contact parameter configured as an option, the Oracle Communications Session Border Controller looks for the URI parameter (as defined by the gateway contact parameter) in the Request-URI and decodes the gateway address." *Id.* at 4 (About the SBC and SIP).




Ex. 30 at 3 (About the SBC and SIP) (showing Oracle's SBC for interworking with VMMT).




Ex. 31 at 21 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle's SBC for interworking with VMMT).

69. Ribbon, for example, uses a softswitch "which also acts as a VoIP server allowing for telecommunication networks to provide management of voice, fax, data and video traffic, and call routing." Ex. 32 (https://ribboncommunications.com/company/get-help/glossary/voip-softswitch).

## What is a VoIP Softswitch

In today's market, most networks are comprised of a variety of combinations of telephony switches and hardware. One of those elements is a softswitch, which also acts as a VoIP server allowing for telecommunication networks to provide management of voice, fax, data and video traffic, and call routing. VoIP softswitches can be subdivided into class 4 and class 5 softswitches.




Ex. 32 (https://ribboncommunications.com/company/get-help/glossary/voip-softswitch) (showing Ribbon's SBC for interworking with VMMT).




Ex. 33 at 2 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) ("Ribbon's core SBCs, including the Software Edition (SBC SWe), SBC 5400 and SBC 7000, are designed for the

heart of service provider networks . . . Ribbon's SBC SWe, SBC 5400 and SBC 7000 are all Microsoft certified for both Operator Connect and Direct Routing.").

70. As another example, Sansay's "VSXi VoIP session controller works in conjunction with Class 5 switches, feature servers and gateways. The VSXi also enables a broad range of differentiated services while ensuring interoperability and secure firewall/NAT/call admission control." Ex. 39 at 2 (https://www.sansay.com/products/vsxi/index.html).




Ex. 40 at 1 (https://www.sansay.com/solutions/microsoft-teams/index.html) ("Sansay and Microsoft have completed the certification of Direct Routing for Microsoft Teams utilizing the Sansay vmVSXi Session Border Controller (SBC) software. The certification will expand product portfolios and simplify Service Provider provisioning allowing for seamless PSTN call delivery and collaboration to Microsoft Teams enterprises.").

71. Defendants' carrier-side ISC GW/SBC remains an additional accused MNO gateway because it separately performs the claimed gateway functions post ACG's retirement on October 30, 2025.

72. Defendants provide, direct, and control an information repository that stores a device identifier associated with a particular device of a social network user having a plan with a mobile network operator (MNO) such as Verizon. During the provisioning and federation setup, Defendants and Microsoft or the certified SBC vendor create a mapping between a VMMT user (social network user) identity (e.g., Account Name or other Azure AD/Entra ID identifiers) and a mobile number (device identifier). *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect); Ex. 41 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/provisioning-platform); Ex. 42 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/integrate-with-provisioning-api).




Ex. 27 at 1 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect).

73. When a user is onboarded, Defendants associate their Microsoft Teams identity with a Verizon-provided mobile number, storing a "device identifier" (the mobile number) tied to a specific device and MNO plan. This repository acts as the source for identity resolution and call routing during communications initiated from Teams. The device identifier selected by the VMMT user is stored in the information repository in response to a registration process that authenticates the Microsoft Teams user. The onboarding process for VMMT includes user authentication through Azure/Entra ID, ensuring that the Microsoft Teams user is a verified organizational user. *See* Ex. 43 (https://learn.microsoft.com/en-us/entra/fundamentals/what-is-entra) ("Microsoft Entra ID . . . is a cloud-based identity and access management service that

provides authentication, policy enforcement, and protection for users, devices, apps, and resources.”).

74. Defendants provide, direct, and control VMMT to query the information repository and retrieve the device identifier for the social network user. This process is facilitated through a real-time query of an internal mapping repository that links Microsoft Teams identities (e.g., Account Name or other Azure AD/Entra ID identifiers) with Verizon-provisioned mobile numbers. *See* Ex. 44 (https://learn.microsoft.com/en-us/entra/identity/saas-apps/verizon-provisioning-tutorial) (explaining the attribute mapping functionality for provisioning).

75. Defendants' gateway infrastructure includes a communication interface that receives SIP (Session Initiation Protocol) signaling messages relating to real-time communication requests, including calls originating from a Microsoft Teams client and directed to a Verizon-provisioned mobile number, and calls originating from a Verizon mobile subscriber directed to a Microsoft Teams user. *See* Ex. 17 at 1 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/) (“Verizon Mobile for Microsoft Teams Terms,” “[o]nce assigned Verizon will route all traffic to and from Microsoft Teams to the PSTN as needed to complete calls utilizing the Verizon Wireless cellular network.”).

76. Defendants' ISC GW receives SIP INVITE messages and associated real-time communication signaling from Microsoft Teams via ACG or another certified SBC vendor. *See* Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point). These messages initiate calls that originate from a Teams client and are directed to a Verizon mobile number. Upon receipt, the ISC GW forwards or

terminates the request within, for example, the IMS core, establishing a connection with the Verizon subscriber's device. Alternatively, Defendants receive an SIP message from the certified SBC vendor and associated real-time communication signaling from Microsoft Teams via the certified SBC vendor, as described above.

77. The SIP signaling messages received by the ISC GW include fields that identify the Microsoft Teams application as the source of the communication request. This is done, for example, through standard SIP headers (e.g., User-Agent, P-Asserted-Identity) and proprietary Microsoft extensions that reflect the app identity. *See* Ex. 45 (http://transnexus.com/whitepapers/sip-invite-header-fields). For example, VMMT adds X-MS-FMC or X-MS-SBC headers to SIP INVITE messages to signal that the SIP message is associated with a VMMT user. *See* Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point); Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect).

> MCP always queries MPS unless the call meets one of the following conditions:
>
> - A mobile originating call has an X-MS-FMC header with any value.
> - A call from a Teams client has an X-MS-FMC header with the value `APP`.
> - A mobile terminating call has an X-MS-FMC header with the value `MT`.
>
> These X-MS-FMC headers are added by MPS, and allow MCP to avoid creating loops where it continually queries MPS.
>
> MCP determines whether a call is mobile originating or mobile terminating by using (in order of preference) the `sescase` parameter on the P-Served-User header, `term` or `orig` parameters on the top Route header or `term` or `orig` parameters in the URI of the Route header. If none of these parameters are present, MCP treats the call as mobile terminating.

Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point).

78. Additionally, ACG can add a custom header to messages sent to Verizon's network, where Defendants can add custom information that they might need, for example, to

assist with billing in Direct Routing. *See* Ex. 46 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/whats-new). VMMT requires a P-Charge-Info and P-Charging-Vector element from the SIP INVITE message to be sent to the gateway for their Charge Initiation and associated billing fees outlined in their legal terms. *See* Ex. 17 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/). The P-Charge-Info and P-Charging-Vector are additional data that are used by the MNO for accounting purposes in billing the real-time communication.

Table 3, below, provides a list of the Required Elements from the SIP Method 'INVITE'.

| SIP Method 'INVITE' | Description |
|---|---|
| Via | Branch parameter – Identifies this transaction |
| To | SIP URI of target address |
| From | SIP URI of originator |
| Call-ID | Globally unique identifier of call |
| CSeq (Command Sequence) | Integer and method name |
| Contact | PSTN ingress trunk group identifier |
| Max-Forwards | Hop count |
| Allow | |
| Accept | |
| Contact – PSTN ingress trunk group # | |
| P-Charge-Info | |
| P-Charging-Vector | |
| Supported | |
| Session-Expire | |

Table 3 – SIP Invite Required Elements

Ex. 47 at Attach. A, p. 10 (https://www.puc.pa.gov/pcdocs/1818565.pdf).

79. The SIP messages received by the ISC GW include federated identity information associated with a Microsoft Teams user. The SIP signaling messages contain or are associated with device identifiers, including, for example, phone numbers or Teams-

specific device tokens that are used for routing and policy applications. *See* Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip). Additionally, at least one item of additional data is included, such as the Teams user ID, account name, tenant ID, or calling context metadata. *See id.* These data elements are available to and processed by the ISC GW, either directly or via integration with the IMS core and BSS.

# Quick provisioning

Quickly manage and assign organization phone numbers directly through Microsoft Teams Admin Center.

Ex. 49 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/operator-connect/) (showing that Defendants directly manage provisioning and assign organization phone numbers through Microsoft Teams Admin).




Verizon Mobile for Microsoft Teams: Getting Started Line Level Set Up, https://www.youtube.com/watch?v=1pYyQgNPnWw.

80. Defendants format and transmit call setup information from the SIP messages including the resolved mobile number to their MNO infrastructure, such as the "IMS core" gateway, when configured through ACG; or the "Enterprise Network," for example, when configured through a certified SBC vendor.




Ex. 27 at 1 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) (showing the call setup information transmitting to the IMS Core).




Ex. 31 at 21 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing the call setup information transmitting to Oracle's Enterprise Network).

81. Defendants use the Microsoft Teams user's device identifier in its MNO gateway in initiating a phone call. The device identifier serves as the destination address in the call signaling process, and the VMMT network uses it to ring the correct SIM-based device.




Ex. 50 at 6 (https://learn.microsoft.com/en-us/azure/communication-services/concepts/telephony/direct-routing-sip-specification).

**DEFENDANTS' KNOWLEDGE OF TELESOCIAL AND TELESOCIAL'S PATENTS**

82. Telesocial Inc. and Defendants entered into a Mutual Nondisclosure Agreement ("NDA") in August 2009 in order to begin discussions regarding a potential partnership. Telesocial did not disclose any confidential information relating to its patented technology until after it had filed the provisional application that led to its Asserted Patents.

83. Separately, Telesocial Inc. met with Vodafone in 2010 to discuss a potential partnership. At that time, Vodafone owned 45% of Defendant Cellco d/b/a Verizon Wireless, which Defendant Verizon Communications Inc. later acquired in 2013. *See* Ex. 51 (https://www.verizon.com/about/system/files/investor-event-transcript/vz_conf_call_transcript.pdf) (Verizon reaches agreement to acquire Vodafone's 45 percent interest in Verizon Wireless for $130 Billion).

84. During the confidential discussions between Telesocial Inc. and Defendants and after Telesocial had filed its patent applications, Telesocial Inc. informed Defendants that it had patents pending on its technology. *See, e.g.*, Ex. 52 (2011-05-23 Telesocial Presentation); Ex. 53 (2011 Telesocial Presentation). Telesocial is informed and believes that Verizon shared these presentations internally to various members of Verizon's marketing and development team.

85. Notwithstanding its documented knowledge of and interest in Telesocial Inc.'s patent-pending technology, Defendants ultimately declined to enter into a partnership with Telesocial Inc. and instead began offering the infringing Accused Technologies.

86. Defendants had further knowledge of Telesocial's Asserted Patents by October 28, 2020, when a USPTO Examiner cited Telesocial's parent patent application publication as a reference pertinent to the patentability of Verizon's later-filed U.S. Patent No. 11,444,987 (the "'987 Patent"). *See, e.g.*, Ex. 54 ('987 Patent Office Action (Oct. 28, 2020) Notice of References Cited) at 4 (listing Telesocial's parent patent application publication No. US-20110069661-A1, corresponding to U.S. Patent No. 8,599,857, within the Notice of References Cited); Ex. 55 (U.S. Patent No. 11,444,987) at 2.[1] Telesocial's cited application shares the same specification as the Asserted Patents and is directed to the same field as Verizon's application.

[1] Verizon Patent and Licensing Inc., a patent-holding and patent-filing arm owned and controlled by Defendants, filed and is the owner by assignment of U.S. Patent No. 11,444,987. *See* Ex. 56 (sec.gov/Archives/edgar/data/934549/000101968712001538/acacia_8k-042612.htm?utm) (following a patent infringement complaint where Verizon Communications Inc. was one of the defendants, a settlement and license agreement was entered into with Verizon Patent and Licensing Inc.).

87. The foregoing establishes that Verizon had actual knowledge the family of Telesocial's Asserted Patents by no later than October 28, 2020, well before this suit.

88. As a result of these disclosures, Defendants' infringement of the Asserted Patents has been and continues to be deliberate and intentional. At a minimum, Defendants were at least willfully blind to Telesocial's patents and patent rights in view of these disclosures. Defendants knew or should have known there was a high probability that Telesocial Inc. held patent rights covering their Accused Technologies, and Defendants knew of or deliberately avoided confirming those rights before making, using, and offering for sale, the Accused Technologies.

## COUNT I – DIRECT INFRINGEMENT OF THE '588 PATENT

89. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

90. Defendants have infringed and continue to directly infringe at least Claim 10 of the '588 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and offering for sale in the United States, Texas, and this District, at least the Accused Technologies without the permission, consent, authorization, or license of Telesocial.

91. Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

92. Defendants' direct infringement includes, but is not limited to, the use, sale, and offer for sale of products and services incorporating Telesocial's technology covered by the '588 Patent, including the Accused Technologies, thereby infringing the claimed methods and apparatuses. Defendants directly infringe the claimed methods because Defendants perform, or direct and control the performance of, each claimed step using apparatus and systems that

Defendants own, assemble, operate, store, and control, including the Accused Technologies. In particular, the Accused Technologies provide a set of applications that are used in regular business functions, which allow users to interact with multiple information forms across multiple types of computing devices and platforms, including various smartphones, tablets, laptops, and desktop computers.

93. With respect to the apparatus claims of the ’588 Patent, to the extent third parties provide any components of the claimed apparatus, Defendants directly infringe by acting as the final assembler and administrator of the infringing apparatus, which Defendants own and operate. For example, Defendants have a contract with their customers for which customers agree to use VMMT, and Defendants agree to provide VMMT.

> This Addendum modifies the contract (the "**Agreement**") between you as our Customer ("**you**") and Verizon Wireless ("**Verizon**", "**VZW**", "**we**" or "**us**") under which you purchase cellular service. It sets forth the terms and conditions under which you agree to use and we agree to provide the Service. By using the Service, you accept these Terms and Conditions, which may be modified by us from time to time. By continuing to use the Service after we have notified you of changes, you agree to accept those changes.

Ex. 17 at 1 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/) (showing Defendants’ user agreement). Defendants’ customers thereby use every element of the claimed apparatus, and that use is attributable to Defendants due to their contractual relationship.

94. Alternatively, Defendants directly infringe the claimed methods and apparatuses under 35 U.S.C. § 271(a), because Defendants direct and control the performance of Microsoft’s ACG and SBCs delivered by third-party certified SBC vendors within VMMT. Defendants condition participation in and the benefits of the Accused Technologies on the performance of the claimed steps and establish the manner and timing of that performance.

95. By way of example of Defendants' infringement of the '588 Patent, the Accused Technologies meet all the limitations of Claim 10 of the '588 Patent.

96. For example, VMMT performs a method carried out by a softswitch for supporting advanced telecommunication functions. Defendants "provide switched access services that allow carriers to complete their end-user calls that originate or terminate within [their] territory. In addition, "[Defendants] provide originating and terminating voice services throughout the U.S. and globally utilizing [their] time-division multiplexing and Voice over Internet Protocol (VoIP) networks." Ex. 20, Verizon 2024 10-K at 9 (https://www.sec.gov/ix?doc=/Archives/edgar/data/0000732712/000073271225000006/vz-20241231.htm). The VMMT mobile-integrated unified communications service allows a user's native mobile number from Verizon to be fully integrated with Microsoft Teams, supporting advanced telecommunication functions, such as: calling, voicemail, and other communication features across both the mobile network and Microsoft Teams interface. *See* Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/). VMMT enables Verizon Customers to make and receive live voice calls over the public switched telephone network (PSTN) using their Verizon-provisioned mobile number, while using the Microsoft Teams application as a unified communication interface. *Id.* at 3 ("Make and receive calls outside your organization via the smartphone's keypad or Teams endpoints using a single Verizon business-provided mobile number."); *see* Ex. 22 (https://learn.microsoft.com/en-us/previous-versions/microsoft-365/solutions/deploy-voice).

97. The VMMT method carried out by a softswitch for supporting real-time communications includes Defendants' operation and control of the ACG cloud platform as the

claimed softswitch, which communicates messages with a separate gateway of the MNO, such as the ISC GW/SBC gateway. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). Microsoft retired ACG on October 30, 2025, and directed customers of VMMT to transition to another Microsoft Teams Direct Routing-certified SBC before that date. *See* Ex. 25 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/prepare-to-deploy). Post-retirement, one or more Microsoft Teams Direct Routing-certified SBCs were deployed to replace ACG as the accused softswitch. Defendants operate and control the certified SBCs softswitch functions between Defendants' telecommunications network and Microsoft Teams. *See* Ex. 30 (About the SBC and SIP) (explaining Oracle's SBC's softswitch capabilities); Ex. 32 (https://ribboncommunications.com/company/get-help/glossary/voip-softswitch) (explaining Ribbon's SBC's softswitch capabilities); Ex. 39 (https://www.sansay.com/products/vsxi/index.html) (explaining Sansay's SBC's softswitch capabilities). In addition, the IMS application-server and ISC gateway functionality in Defendants' network or Defendants' Session Border Controller as a Service, each of which receives the call request and generates the SIP messages sent to Defendants' S-CSCF and other gateways of the MNO, are a softswitch. Each of these mappings is pleaded in the alternative.

98. VMMT receives a request for initiating real-time communication involving at least one social network user. For example, the gateway infrastructure includes a communication interface, the Mobile Control Point ("MCP") that receives SIP (Session Initiation Protocol) signaling messages relating to real-time communication requests. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) ("MCP then adds X-MS-FMC headers and updates

the signaling to divert the call into the Microsoft Phone System through [ACG].”). MCP is “an IMS Application Server” that “queries MPS [Microsoft Phone System] to determine whether the caller or callee is eligible for Teams Phone Mobile services,” and a “call from a Teams client has an X-MS-FMC header with the value APP.” Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point).

99. Alternatively, Defendants direct and control and put into use the SBC delivered by the certified SBC vendors to perform ACG’s former gateway functions that receive at least one message relating to a real-time communication request. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC’s SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon’s SBC’s SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay’s SBC’s SIP signaling and media flow); Ex. 10 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/enterprise-calling/) (explaining that VMMT includes “a Session Border Controller as a Service product that can be configured by Verizon for secure interconnectivity and needed translation for SIP connectivity between existing systems and Microsoft Teams Phone.”).

100. VMMT generates at least one message for communication to at least one gateway of the MNO in response to receiving the request. For example, after querying Microsoft Phone System, MCP “updates the signaling on the call to route the call” and returns the SIP request to Defendants’ IMS S-CSCF, with which “MCP integrates . . . using an ISC interface,” and Defendants’ IMS network in turn sends SIP messages to the gateways serving

the called party. *See* Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point) ("MCP acts as a SIP proxy. It queries MPS to determine if a call involves a Teams Phone Mobile subscriber and updates the signaling on the call to route the call to MPS as required."). For example, the transfer of information from ACG to the ISC GW includes device identifier information, including a phone number or Teams-specific device tokens that are used for routing and policy applications. *See* Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip). VMMT retrieves the device identifier (e.g., the user's mobile number) and communicates it to at least one gateway of the MNO to complete the call leg setup. The SIP signaling messages also contain or are associated with device identifiers, including a phone number or Teams-specific device tokens that are used for routing and policy application. *See* Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip).

101. Alternatively, the SIP signaling messages received by the ISC GW include fields that identify the Microsoft Teams application as the source of the communication request. This is done, for example, through standard SIP headers (e.g., User-Agent, P-Asserted-Identity) and proprietary Microsoft extensions that reflect the app identity. *See* Ex. 45 (http://transnexus.com/whitepapers/sip-invite-header-fields/) ("The P-Asserted-Identity header field is an important SIP header used among trusted SIP entities (typically intermediaries) to carry the identity of the user sending a SIP message as it was verified by authentication. . . . The User-Agent header field contains information about the UAC originating the request. It describes the source device that generated the SIP INVITE.").

102. The VMMT message includes information about at least one social network user (VMMT user) that is making or is an intended recipient of said requested communication

and that has a plan with the MNO, including a device identifier and at least one item of additional data. For example, the SIP messages contain or are associated with device identifiers, including a phone number or Teams-specific device tokens that are used for routing and policy applications. *See* Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip). The SIP messages also include at least one item of additional data, such as the Teams user ID, account name, tenant ID, or calling context metadata.

103. The VMMT message includes at least one item of additional data that represents at least a first information that identifies a social network application from which the real-time request was initiated. For example, the SIP messages exchanged among MCP, Microsoft Phone System, and Defendants' network carry an X-MS-FMC header, and a "call from a Teams client has an X-MS-FMC header with the value APP," which identifies Microsoft Teams as the application from which the real-time communication request was initiated. *See* Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point) ("These X-MS-FMC headers are added by MPS . . . ."); Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) ("MCP then adds X-MS-FMC headers and updates the signaling to divert the call into the Microsoft Phone System through the [ACG].").

104. Alternatively, the certified vendor SBC communicate SIP messages, which include at least one item of additional data that identifies a social network application from which the real-time request was initiated. For example, the SIP signaling messages received by the ISC GW from the certified SBC vendors include fields such as headers or metadata that identify the Microsoft Teams social network application as the source of the real-time communication request. For example, in Direct Routing, Microsoft Phone System populates

the History-Info header with entries in which "the Direct Routing FQDN (sip.pstnhub.microsoft.com) [is] set as the host part of the URI," and populates transfer-related headers with the Microsoft Teams "Tenant ID," thereby identifying Microsoft Teams as the application from which the request was initiated. *See* Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip); Ex. 31 at 43 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) ("[The] header, included within SIP INVITE messages, provides a mechanism to replace an existing early or established dialog with a different dialog. The different dialog can be used for Microsoft Teams services such as call parking, attended call transfer and various conferencing features."); Ex. 57 (Ribbon SBC Edge R9.0 SIP Interface Interop with Identity Hub Interoperability Guide) ("The SIP client initiates a request by routing the SIP INVITE request for a call to the Identity Hub service FQDN. The INVITE request must include a FROM header to identify the calling party and a To header to identify the called party.").

105. Defendants' direct infringement of the '588 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty.

106. Defendants have had knowledge of the '588 Patent, or were willfully blind to its existence, before the filing of this Complaint, as alleged in the section above titled "Defendants' Knowledge of Telesocial and Telesocial's Patents," and in any event have had knowledge of the '588 Patent and of their infringement since at least the filing of this Complaint. Defendants' continued actions are willful, blatant, and in egregious disregard for Telesocial's patent rights.

107. Defendants' willful infringement is causing damage and irreparable injury to Telesocial, and Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

108. Defendants have acted recklessly, willfully, wantonly, and deliberately to engage in acts of infringement of the '588 Patent, justifying an award to Telesocial of increased damages under 35 U.S.C. § 284.

109. Telesocial is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Defendants' direct infringement of the '588 Patent.

**COUNT II – INDIRECT INFRINGEMENT OF THE '588 PATENT**

110. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

111. As set forth with respect to Count I, at least the Accused Technologies, including VMMT, directly infringe the '588 Patent, and Defendants direct and control at least the performance of Microsoft and the SBCs delivered by certified SBC vendors (including Oracle, Ribbon, and Sansay) that operate the accused softswitch functionality. In addition to directly infringing the '588 Patent, Defendants have actively, knowingly, and intentionally induced and continue to induce direct infringement of the '588 Patent under 35 U.S.C. § 271(b) by third parties.

112. In the alternative, and to the extent the operation of the accused softswitch functionality by Microsoft or the certified SBC vendors is not attributable to Defendants, Microsoft and the certified SBC vendors directly infringe the '588 Patent by making and using the claimed apparatus and performing the claimed method, and Defendants induce that direct

infringement, for example, by partnering with, enabling, configuring, directing, and encouraging Microsoft and certified SBC vendors to deploy and operate the accused softswitch functionality as part of VMMT, knowing that those acts constitute infringement of the '588 Patent. As alleged above, Defendants have known of the '588 Patent, or were willfully blind to it, since before the filing of this Complaint and from their receipt of this Complaint, and Defendants have known, or were willfully blind to the fact, that the induced acts constitute infringement. For example, Defendants support and encourage all the infringing functionalities discussed above through the resources on their websites. *See, e.g.*, Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/).

113. Defendants instruct, encourage, and enable Microsoft or the certified SBC vendors on how to configure and operate each of these core softswitch features of the Accused Technologies, for example VMMT, including through their partnership and integration agreements, joint provisioning and onboarding, direct communication, trainings, reference materials, technical specifications, user guides, promotional materials, support contracts, sales calls, release notes, webinars, guidelines, videos, manuals, and white papers, all of which are intended to enable and encourage the infringing operation of the accused functionality, including the accused softswitch functionality, within VMMT. These are affirmative, active steps taken with the specific intent that Microsoft and the certified SBC vendors operate the accused functionality in the infringing manner described above. *See* https://www.youtube.com/watch?v=1pYyQgNPnWw (user guide video for VMMT); Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (reference materials and FAQ for VMMT); Ex. 58

(https://ribboncommunications.com/products/service-provider-products/session-border-controllers-service-providers#) (providing resources such as white paper, guide, datasheet, and webinar for users of Ribbon's SBC).

114. Defendants' websites promote the Accused Technologies, for example, VMMT, and describe the benefits of these products. *See* Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (showing benefits and user video guide for VMMT); Ex. 59 (https://www.sansay.com/wp-content/uploads/2013/05/Sansay_VSXi_Session-Controller_9_2013.pdf) (describing the benefits of Sansay's SBC); (https://www.oracle.com/a/ocom/docs/industries/communications/enterprise-session-border-controller-ds.pdf) (data sheet on the advantages and benefits of Oracle's SBC).

115. Defendants are also liable for contributory infringement of the '588 Patent pursuant to 35 U.S.C. § 271(c) by knowing or being willfully blind to the fact that they are contributing to infringement of the '588 Patent by third parties such as Microsoft and the certified SBC vendors, in the alternative as set forth above, by offering to sell and selling in the United States the Accused Technologies and the softswitch components thereof, which constitute a material part of the claimed invention. The Accused Technologies and their softswitch components are not a staple article or commodity of commerce suitable for substantial non-infringing use. This is because the core functionality of the Accused Technologies, as described in the example above, infringes the '588 Patent when it is used. Because there is no other use for the Accused Technologies and because they always infringe when their core functionality is used, there is no substantial non-infringing use for the Accused Technologies.

116. Defendants' indirect infringement of the '588 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty. Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by the Court.

117. Pursuant to 35 U.S.C. §§ 283, 284, and 285, Telesocial is entitled to injunctive relief, damages, and attorney's fees and costs.

**COUNT III – DIRECT INFRINGEMENT OF THE '950 PATENT**

118. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

119. Defendants have infringed and continue to directly infringe at least Claim 1 of the '950 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and offering for sale in the United States, Texas, and this District, at least the Accused Technologies without the permission, consent, authorization, or license of Telesocial.

120. Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

121. Defendants' direct infringement includes, but is not limited to, the use, sale, and offer for sale of products and services incorporating Telesocial's technology covered by the '950 Patent, including the Accused Technologies, thereby infringing the method and MNO-gateway claims of the '950 Patent. Defendants directly infringe the claimed methods because Defendants perform, or direct and control the performance of, each claimed step using apparatus and systems that Defendants own, assemble, operate, store, and control, including the Accused Technologies. In particular, the Accused Technologies provide a set of applications that are used in regular business functions, which allow users to interact with

multiple information forms across multiple types of computing devices and platforms, including various smartphones, tablets, laptops, and desktop computers.

122. To the extent third parties provide any components of the claimed MNO-gateway apparatus, Defendants directly infringe by acting as the final assembler and administrator of the infringing apparatus described below, which Defendants own and operate. For example, Defendants have a contract with their customers for which customers agree to use VMMT and Defendants agree to provide VMMT.

This Addendum modifies the contract (the "**Agreement**") between you as our Customer ("**you**") and Verizon Wireless ("**Verizon**", "**VZW**", "**we**" or "**us**") under which you purchase cellular service. It sets forth the terms and conditions under which you agree to use and we agree to provide the Service. By using the Service, you accept these Terms and Conditions, which may be modified by us from time to time. By continuing to use the Service after we have notified you of changes, you agree to accept those changes.

Ex. 17 at 1 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/) (showing Defendants' user agreement). Defendants' customers thereby use every element of the claimed apparatus, and that use is attributable to Defendants due to their contractual relationship.

123. Alternatively, Defendants directly infringe the claimed methods and apparatuses under 35 U.S.C. § 271(a), because Defendants direct and control the performance of Microsoft's ACG and SBCs delivered by third-party certified SBC vendors within VMMT. Defendants condition participation in and the benefits of the Accused Technologies on the performance of the claimed steps and establish the manner and timing of that performance.

124. By way of example of Defendants' infringement of the '950 Patent, the Accused Technologies meet all the limitations of Claim 1 of the '950 Patent.

125. For example, VMMT includes a mobile network operator (MNO) gateway for use in a system supporting advanced telecommunication functions. VMMT supports real-time

telecommunications over Defendants' mobile network. Defendants partnered with Microsoft to offer Customers VMMT. *See* Ex. 61 at 1 (https://www.verizon.com/business/resources/T8c/whitepapers/new-way-to-work-new-way-to-mobilize-microsoft-teams.pdf) ("Through [Defendants'] strategic relationship with Microsoft, Verizon is the first US operator to offer Microsoft Teams Phone Mobile, delivered as Verizon Mobile for Microsoft Teams."). VMMT includes mobile-integrated unified communications service that allows a user's native mobile number from Verizon to be fully integrated with Microsoft Teams, supporting advanced telecommunication functions, such as: calling, voicemail, and other communication features across both the mobile network and Teams interface. *See* Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/). VMMT enables Verizon Customers to make and receive live voice calls over the public switched telephone network (PSTN) using their Verizon-provisioned mobile number, while using the Microsoft Teams application as a unified communication interface. *Id.* at 3 ("Make and receive calls outside your organization via the smartphone's keypad or Teams endpoints using a single Verizon business-provided mobile number."); *see* Ex. 22 (https://learn.microsoft.com/en-us/previous-versions/microsoft-365/solutions/deploy-voice).

126. The VMMT method for supporting real-time communications includes Defendants' operation and control of the ACG cloud platform as an MNO gateway. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). Alternatively, Defendants' carrier-side ISC GW/SBC, together with associated IMS/application-server gateway functionality, is separately accused as the claimed MNO gateway. Microsoft retired ACG on October 30, 2025, and

directed customers of VMMT to transition to another Microsoft Teams Direct Routing-certified SBC before that date. *See* Ex. 25 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/prepare-to-deploy). Post-retirement, one or more Microsoft Teams Direct Routing-certified SBCs were deployed to replace ACG as the accused MNO gateway because they perform the SIP gateway and interconnection functions between Defendants' telecommunications network and Microsoft Teams. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow); Ex. 10 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/enterprise-calling/) (explaining that VMMT includes "a Session Border Controller as a Service product that can be configured by Verizon for secure interconnectivity and needed translation for SIP connectivity between existing systems and Microsoft Teams Phone."). Alternatively, Defendants' carrier-side ISC GW/SBC remains an additional accused MNO gateway because it separately performs the claimed gateway functions. In the further alternative, the claimed MNO gateway is Defendants' IMS core network elements, including the S-CSCF, the ISC gateway function, and associated application servers, that receive the SIP messages described below and apply the Teams Phone Mobile treatment configured in the subscriber's HSS profile. Each of these mappings is pleaded in the alternative.

127. VMMT has a communication interface that receives at least one message relating to a real-time communication request. For example, the gateway infrastructure includes a communication interface, the Mobile Control Point ("MCP") that receives SIP (Session Initiation Protocol) signaling messages relating to real-time communication requests. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) ("MCP then adds X-MS-FMC headers and updates the signaling to divert the call into the Microsoft Phone System through [ACG]."). MCP is "an IMS Application Server" that "queries MPS [Microsoft Phone System] to determine whether the caller or callee is eligible for Teams Phone Mobile services," and a "call from a Teams client has an X-MS-FMC header with the value APP." Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point). Alternatively, Defendants direct and control and put into use the SBC delivered by the certified SBC vendors to perform ACG's former gateway functions that receive at least one message relating to a real-time communication request. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow); Ex. 10 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/enterprise-calling/) (explaining that VMMT includes "a Session Border Controller as a Service product

that can be configured by Verizon for secure interconnectivity and needed translation for SIP connectivity between existing systems and Microsoft Teams Phone.”).

128. The VMMT’s messages include information about at least one social network user (VMMT user) that is making or is an intended recipient of the requested communication that has a plan with the MNO, including a device identifier and at least one item of additional data. For example, the SIP messages contain or are associated with device identifiers, including a phone number and Teams-specific device tokens that are used for routing and policy applications. *See* Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip). The SIP messages also include at least one item of additional data, such as the Teams user ID, account name, tenant ID, and calling context metadata.

129. The VMMT messages include additional data that represent information identifying the social network application (Microsoft Teams) from which the real-time communication request was initiated. The VMMT SIP messages received by the ISC GW include fields that identify the Microsoft Teams application as the source of the communication request, including the SIP headers. *See* Ex. 45 (http://transnexus.com/whitepapers/sip-invite-header-fields/). For example, the X-MS-FMC or X-MS-SBC headers are added to SIP INVITE messages to signal to Verizon that the SIP message is associated with a Teams Phone Mobile subscriber. In particular, a “call from a Teams client has an X-MS-FMC header with the value APP.” Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point); *see* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect).

130. Alternatively, Defendants direct and control and put into use the SBC delivered by the certified SBC vendors to perform ACG's former gateway functions which include SIP messages and signaling including information identifying the social network application from the real-time communication request. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow).

131. The ISC GW includes functionality that uses the additional data pertaining to the social network user (Microsoft Teams user) for administering the plan with the MNO (Verizon) that are associated with the social network user (Microsoft Teams user). VMMT uses the Microsoft Teams identity, device information, and app-originating metadata to administer the mobile plan associated with the Verizon Customer. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) ("MCP then adds X-MS-FMC headers and updates the signaling to divert the call into the Microsoft Phone System through [ACG].").

132. When a Teams-originated SIP call is received, the ISC GW queries the IMS core and HSS to verify that the user's plan includes support for VMMT. Verizon provisions and federates mobile numbers and Teams identities in the BSS (Business Support System) using an HTTPS-based provisioning flow that configures service entitlements tied to Teams usage. *See* Ex. 62 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-

gateway/manage-enterprise-operator-connect); Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect).

133. For example, Microsoft instructs operators that "Teams Phone Mobile subscribers require Initial Filter Criteria (iFC) configuration in the HSS" so that MCP is invoked for their calls, and that if the user is not eligible, "native mobile calls continue to reach their target, although without Microsoft Teams services." Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point). Defendants thus use the Teams-identifying data in administering the subscriber's Verizon plan, including by determining whether the Teams Phone Mobile services provided under that plan apply to the call and by charging for the service under Defendants' Verizon Mobile for Microsoft Teams terms. *See* Ex. 17 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/).

134. Defendants' direct infringement of the '950 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty.

135. Defendants have had knowledge of the '950 Patent, or were willfully blind to its existence, before the filing of this Complaint, as alleged in the section above titled "Defendants' Knowledge of Telesocial and Telesocial's Patents," and in any event have had knowledge of the '950 Patent and of their infringement since at least the filing of this Complaint. Defendants' continued actions are willful, blatant, and in egregious disregard for Telesocial's patent rights.

136. Defendants' willful infringement is causing damage and irreparable injury to Telesocial, and Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

137. Defendants have acted recklessly, willfully, wantonly, and deliberately to engage in acts of infringement of the ’950 Patent, justifying an award to Telesocial of increased damages under 35 U.S.C. § 284.

138. Telesocial is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Defendants’ direct infringement of the ’950 Patent.

**COUNT IV – INDIRECT INFRINGEMENT OF THE ’950 PATENT**

139. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

140. As set forth with respect to Count III, Defendants directly infringe the ’950 Patent by making and using the claimed MNO gateway, including Defendants’ carrier-side ISC GW/SBC and associated IMS core network elements, within the Accused Technologies, including VMMT. This Count is pleaded in the alternative, to the extent any element of the claimed MNO gateway is found to be made, used, or operated by a third party, including Microsoft (through ACG), the certified SBC vendors (including Oracle, Ribbon, and Sansay) and the SBCs they provide, and that making, use, or operation is found not to be attributable to Defendants.

141. In that event, those third parties directly infringe at least Claim 1 of the ’950 Patent under 35 U.S.C. § 271(a) by making and using the claimed MNO gateway within VMMT, as described in Count III, and Defendants have actively, knowingly, and intentionally induced and continue to induce that direct infringement under 35 U.S.C. § 271(b). For example, Defendants induce that direct infringement by partnering with, enabling, configuring, directing, and encouraging Microsoft and the certified SBC vendors to deploy and operate

ACG and the certified SBCs as part of VMMT; by interconnecting those components with Defendants' network; and by provisioning their customers' VMMT-enabled lines and Microsoft Teams identities so that the accused gateway functionality is invoked for those customers' calls, knowing that those acts constitute infringement of the '950 Patent. Defendants have known of the '950 Patent, or were willfully blind to it, since before the filing of this Complaint, as alleged above, and in any event since at least the filing of this Complaint, and Defendants have known, or were willfully blind to the fact, that the induced acts constitute infringement. For example, Defendants support and encourage all the infringing functionalities discussed above through the resources on their websites. *See, e.g.*, Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/).

142. Defendants instruct, encourage, and enable Microsoft and the certified SBC vendors on how to configure and operate the accused gateway functionality of VMMT, including through their partnership and integration agreements, joint provisioning and onboarding, direct communication, trainings, reference materials, technical specifications, user guides, promotional materials, support contracts, sales calls, release notes, webinars, guidelines, videos, manuals, and white papers, all of which are intended to enable and encourage the infringing operation of the accused gateway functionality within VMMT. These are affirmative, active steps taken with the specific intent that Microsoft and the certified SBC vendors operate the accused gateway functionality in the infringing manner described above. *See* https://www.youtube.com/watch?v=1pYyQgNPnWw (user guide video for VMMT); Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (reference materials and FAQ for VMMT); Ex. 17

(https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/) (Verizon Mobile for Microsoft Teams terms).

143. Defendants' websites promote the Accused Technologies, for example VMMT, and describe the benefits of these products. *See* Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (showing benefits and user video guide).

144. Defendants are also liable for contributory infringement of the '950 Patent pursuant to 35 U.S.C. § 271(c), in the alternative as set forth above, by knowing or being willfully blind to the fact that they are contributing to infringement of the '950 Patent by third parties such as Microsoft and the certified SBC vendors, by offering to sell and selling in the United States VMMT and the gateway components thereof, including Defendants' VMMT-specific network interconnection, gateway, and provisioning functionality, which constitute a material part of the claimed invention. VMMT and its gateway components are especially made or especially adapted for use in infringing the '950 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use. This is because the core functionality of VMMT, as described in Count III, infringes the '950 Patent when it is used. Thus, there is no substantial non-infringing use for VMMT or its gateway components.

145. Defendants' indirect infringement of the '950 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty. Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by the Court.

146. Pursuant to 35 U.S.C. §§ 283, 284, and 285, Telesocial is entitled to injunctive relief, damages, and attorney's fees and costs.

## COUNT V – DIRECT INFRINGEMENT OF THE ’480 PATENT

147. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

148. Defendants have infringed and continue to directly infringe at least Claim 11 of the ’480 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and offering for sale in the United States, Texas, and this District, at least the Accused Technologies without the permission, consent, authorization, or license of Telesocial.

149. Defendants’ infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

150. Defendants’ direct infringement includes, but is not limited to, the use, sale, and offer for sale of products and services incorporating Telesocial’s technology covered by the ’480 Patent, including the Accused Technologies, thereby infringing the claimed methods and apparatuses. Defendants directly infringe the claimed methods because Defendants perform, or direct and control the performance of, each claimed step using apparatus and systems that Defendants own, assemble, operate, store, and control, including the Accused Technologies. In particular, the Accused Technologies provide a set of applications that are used in regular business functions, which allow users to interact with multiple information forms across multiple types of computing devices and platforms various smartphones, tablets, laptops, and desktop computers.

151. With respect to the apparatus claims of the ’480 Patent, and to the extent third parties provide any components of the claimed apparatuses, Defendants directly infringe by acting as the final assembler and administrator of the infringing apparatuses, which Defendants

own and operate. For example, Defendants have a contract with their customers for which customers agree to use VMMT, and Defendants agree to provide VMMT.

> This Addendum modifies the contract (the "**Agreement**") between you as our Customer ("**you**") and Verizon Wireless ("**Verizon**", "**VZW**", "**we**" or "**us**") under which you purchase cellular service. It sets forth the terms and conditions under which you agree to use and we agree to provide the Service. By using the Service, you accept these Terms and Conditions, which may be modified by us from time to time. By continuing to use the Service after we have notified you of changes, you agree to accept those changes.

Ex. 17 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/) (showing Defendants' user agreement). Defendants' customers thereby use every element of the claimed apparatus, and that use is attributable to Defendants due to their contractual relationship.

152. Alternatively, Defendants directly infringe the claimed methods and apparatuses under 35 U.S.C. § 271(a), because Defendants direct and control the performance of Microsoft's ACG and the SBCs delivered by third-party certified SBC vendors within VMMT. Defendants condition participation in and the benefits of the Accused Technologies on the performance of the claimed steps and establish the manner and timing of that performance.

153. By way of example of Defendants' infringement of the '480 Patent, the Accused Technologies meet all the limitations of Claim 11 of the '480 Patent.

154. For example, VMMT performs a method, carried out by a softswitch, for supporting advanced telecommunication functions. Defendants "provide switched access services that allow carriers to complete their end-user calls that originate or terminate within [their] territory. In addition, [Defendants] provide originating and terminating voice services throughout the U.S. and globally utilizing [their] time-division multiplexing and Voice over Internet Protocol (VoIP) networks." Ex. 20, Verizon 2024 10-K at 9 (https://www.sec.gov/ix?doc=/Archives/edgar/data/0000732712/000073271225000006/vz-

20241231.htm). VMMT includes a mobile-integrated unified communications service that allows a user's native mobile number from Verizon to be fully integrated with Microsoft Teams, supporting advanced telecommunication functions, such as: calling, voicemail, and other communication features across both the mobile network and Microsoft Teams interface. *See* Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/). VMMT enables Verizon Customers to make and receive live voice calls over the public switched telephone network (PSTN) using their Verizon-provisioned mobile number, while using the Microsoft Teams application as a unified communication interface. *Id.* at 3 ("Make and receive calls outside your organization via the smartphone's keypad or Teams endpoints using a single Verizon business-provided mobile number."); *see* Ex. 22 (https://learn.microsoft.com/en-us/previous-versions/microsoft-365/solutions/deploy-voice).

155. VMMT's method carried out by a softswitch for supporting real-time communications includes Defendants' operation and control of the ACG cloud platform as the claimed softswitch, which communicates messages with a separate gateway of the MNO, such as the ISC GW gateway. Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). Microsoft retired ACG on October 30, 2025, and directed customers of VMMT to transition to another Microsoft Teams Direct Routing-certified SBC before that date. Ex. 25 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/prepare-to-deploy). Post-retirement, one or more Microsoft Teams Direct Routing-certified SBCs were deployed to replace ACG as the accused softswitch. Defendants operate and control the certified SBCs' softswitch functions between Defendants' telecommunications network and

Microsoft Teams. Ex. 30 (About the SBC and SIP) (explaining Oracle's SBC's softswitch capabilities); Ex. 32 (https://ribboncommunications.com/company/get-help/glossary/voip-softswitch) (explaining Ribbon's SBC's softswitch capabilities); Ex. 39 (https://www.sansay.com/products/vsxi/index.html) (explaining Sansay's SBC's softswitch capabilities). In the alternative, and to the extent ACG or a certified SBC is not the claimed softswitch, the claimed softswitch is the IMS application-server or ISC gateway functionality in Defendants' network, or Defendants' Session Border Controller as a Service, each of which receives the call request and generates the SIP messages sent to Defendants' S-CSCF and other gateways of the MNO. Each of these mappings is pleaded in the alternative.

156. VMMT receives a request for initiating real-time communication involving at least one social network user. For example, the VMMT gateway infrastructure includes a communication interface, the MCP that receives SIP signaling messages relating to real-time communication requests, including calls originating from a Microsoft Teams client and directed to a Verizon-provisioned mobile number, and calls originating from a Verizon mobile subscriber directed to a Microsoft Teams user. Ex. 17 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/). VMMT's ISC GW receives SIP INVITE messages and associated real-time communication signaling from Microsoft Teams via ACG's softswitch functionality. *Id.* These messages initiate calls that originate from at least one social network user, e.g., a Microsoft Teams client and are directed to a Verizon mobile number. MCP is "an IMS Application Server" that "queries MPS [Microsoft Phone System] to determine whether the caller or callee is eligible for Teams Phone Mobile services," and a "call from a Teams client has an X-MS-FMC header with the value APP." Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-

gateway/mobile-control-point). Alternatively, Defendants direct and control and put into use the SBC provided by the certified SBC vendors to perform ACG's former gateway functions that receive a request for initiating real-time communication involving at least one social network user. Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow); Ex. 10 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/enterprise-calling/) (explaining that VMMT includes "a Session Border Controller as a Service product that can be configured by Verizon for secure interconnectivity and needed translation for SIP connectivity between existing systems and Microsoft Teams Phone.").

157. VMMT generates at least one message for communication to at least one gateway of the MNO in response to receiving the request. For example, after querying Microsoft Phone System, MCP "updates the signaling on the call to route the call" and returns the SIP request to Defendants' IMS S-CSCF, with which "MCP integrates . . . using an ISC interface," and Defendants' IMS network in turn sends SIP messages to the gateways serving the called party. Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point) ("MCP acts as a SIP proxy. It queries MPS to determine if a call involves a Teams Phone Mobile subscriber and updates the signaling on the call to route the call to MPS as required."). For example, the SIP signaling

messages received by the ISC GW include fields that identify the Microsoft Teams application as the source of the communication request. This is done, for example, through standard SIP headers (e.g., User-Agent, P-Asserted-Identity) and proprietary Microsoft extensions that reflect the app identity. Ex. 45 at 2-3 (http://transnexus.com/whitepapers/sip-invite-header-fields/) ("The P-Asserted-Identity header field is an important SIP header used among trusted SIP entities (typically intermediaries) to carry the identity of the user sending a SIP message as it was verified by authentication. . . . The User-Agent header field contains information about the UAC originating the request. It describes the source device that generated the SIP INVITE.").

158. VMMT's message includes information about at least one social network user (Microsoft Teams user) that is making or is an intended recipient of said requested communication and that has a plan with the MNO, including a device identifier and at least one item of additional data. For example, the transfer of information from ACG to the ISC GW includes device identifier information, including a phone number or Teams-specific device tokens that are used for routing and policy applications. *See* Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip). The SIP messages also include at least one additional data such as the Teams user ID, account name, tenant ID, and/or calling context metadata. *Id.*

159. The VMMT message includes at least one piece of additional data that is used by the MNO for accounting purposes in billing the real-time communication. For example, the SIP messages contain custom header messages on ACG to assist with billing. Ex. 46 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/whats-new). Defendants' legal terms outline the "Charge Initiation" and associated billing fees

required for VMMT. Ex. 17 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/). For example, VMMT requires additional pieces of data such as P-Charge-Info and P-Charging-Vector elements from the SIP INVITE message to be sent to the ACG, certified SBC vendor, or IMS gateway of VMMT to be used by the MNO for accounting purposes in billing the real-time communication. *See* Ex. 47 (https://www.puc.pa.gov/pcdocs/1818565.pdf).

160. Defendants' direct infringement of the '480 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty.

161. Defendants have had knowledge of the '480 Patent, or were willfully blind to its existence, before the filing of this Complaint, as alleged in the section above titled "Defendants' Knowledge of Telesocial and Telesocial's Patents," and in any event have had knowledge of the '480 Patent and of their infringement since at least the filing of this Complaint. Defendants' continued actions are willful, blatant, and in egregious disregard for Telesocial's patent rights.

162. Defendants' willful infringement is causing damage and irreparable injury to Telesocial, and Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

163. Defendants have acted recklessly, willfully, wantonly, and deliberately to engage in acts of infringement of the '480 Patent, justifying an award to Telesocial of increased damages under 35 U.S.C. § 284.

164. Telesocial is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Defendants' direct infringement of the '480 Patent.

**COUNT VI – INDIRECT INFRINGEMENT OF THE '480 PATENT**

165. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

166. As set forth with respect to Count V, at least the Accused Technologies, including VMMT, directly infringe the '480 Patent, and Defendants direct and control the performance of at least Microsoft and the SBCs delivered by the certified SBC vendors (including Oracle, Ribbon, and Sansay) that operate the accused softswitch functionality. In addition to directly infringing the '480 Patent, Defendants have actively, knowingly, and intentionally induced and continue to induce direct infringement of the '480 Patent under 35 U.S.C. § 271(b) by third parties.

167. In the alternative, and to the extent the operation of the accused softswitch functionality by Microsoft or the certified SBC vendors is not attributable to Defendants, Microsoft and the certified SBC vendors directly infringe the '480 Patent by making and using the claimed apparatus and performing the claimed method, and Defendants induce that direct infringement, for example, by partnering with, enabling, configuring, directing, and encouraging Microsoft and the certified SBC vendors to deploy and operate the accused softswitch functionality as part of the Accused Technologies, knowing that those acts constitute infringement of the '480 Patent. As alleged above, Defendants have known of the '480 Patent, or were willfully blind to it, since before the filing of this Complaint, and from their receipt of this Complaint, and Defendants have known, or were willfully blind to the fact, that the induced acts constitute infringement. For example, Defendants support and encourage all the infringing functionalities discussed above through the resources on their websites. *See,*

*e.g.*, Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/).

168. Defendants instruct, encourage, and enable Microsoft or the certified SBC vendors on how to configure and operate each of these core softswitch features of VMMT, including through their partnership and integration agreements, joint provisioning and onboarding, direct communication, trainings, reference materials, technical specifications, user guides, promotional materials, support contracts, sales calls, release notes, webinars, guidelines, videos, manuals, and white papers, all of which are intended to enable and encourage the infringing operation of the accused functionality, including the accused softswitch functionality, within VMMT. These are affirmative, active steps taken with the specific intent that Microsoft and the certified SBC vendors operate the accused functionality in the infringing manner described above. *See* https://www.youtube.com/watch?v=1pYyQgNPnWw (user guide video for VMMT); Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (reference materials and FAQ for VMMT); Ex. 58 (https://ribboncommunications.com/products/service-provider-products/session-border-controllers-service-providers#) (providing resources such as white paper, guide, datasheet, and webinar for users of Ribbon's SBC).

169. Defendants' websites promote the Accused Technologies, for example VMMT, and describe the benefits of these products. Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (showing benefits and user video guide); *id.* (explaining benefits of VMMT); Ex. 59 (https://www.sansay.com/wp-content/uploads/2013/05/Sansay_VSXi_Session-

Controller_9_2013.pdf) (describing the benefits of Sansay's SBC); Ex. 60 (https://www.oracle.com/a/ocom/docs/industries/communications/enterprise-session-border-controller-ds.pdf) (data sheet on the advantages and benefits of Oracle's SBC).

170. Defendants are also liable for contributory infringement of the '480 Patent pursuant to 35 U.S.C. § 271(c) by knowing or being willfully blind to the fact that they are contributing to infringement of the '480 Patent by Microsoft and the certified SBC vendors, in the alternative as set forth above, by offering to sell and selling in the United States VMMT and the softswitch components thereof, which constitute a material part of the claimed invention. VMMT and its softswitch components are not a staple article or commodity of commerce suitable for substantial non-infringing use. This is because the core functionality of the Accused Technologies as described in the example above infringes the '480 Patent when it is used. Because there is no other use for the Accused Technologies and because they always infringe when their core functionality is used, there is no substantial non-infringing use for the Accused Technologies.

171. Defendants' indirect infringement of the '480 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty. Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by the Court.

172. Pursuant to 35 U.S.C. §§ 283, 284, and 285, Telesocial is entitled to injunctive relief, damages, and attorney's fees and costs.

## COUNT VII – DIRECT INFRINGEMENT OF THE ’152 PATENT

173. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

174. Defendants have infringed and continue to directly infringe at least Claim 1 of the ’152 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and offering for sale in the United States, Texas, and this District, at least the Accused Technologies without the permission, consent, authorization, or license of Telesocial.

175. Defendants’ infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

176. Defendants’ direct infringement includes, but is not limited to, the use, sale, and offer for sale of products and services incorporating Telesocial’s technology covered by the ’152 Patent, including the Accused Technologies, thereby performing the steps of the claimed methods. Defendants directly infringe the claimed methods because Defendants perform, or direct and control the performance of, each claimed step using apparatus and systems that Defendants own, assemble, operate, store, and control, including the Accused Technologies. In particular, the Accused Technologies provide a set of applications that are used in regular business functions, which allow users to interact with multiple information forms across multiple types of computing devices and platforms, including various smartphones, tablets, laptops, and desktop computers.

177. Alternatively, Defendants directly infringe the claimed method under 35 U.S.C. § 271(a), because Defendants direct and control the performance of Microsoft’s ACG and the SBCs delivered by third-party certified SBC vendors within VMMT. Defendants condition

participation in and the benefits of the Accused Technologies on the performance of the claimed steps and establish the manner and timing of that performance.

178. By way of example of Defendants' infringement of the '152 Patent, the Accused Technologies meet all the limitations of Claim 1 of the '152 Patent.

179. For example, VMMT performs a method supporting real-time telecommunication functions. VMMT supports real-time telecommunications. Defendants partnered with Microsoft to offer VMMT. *See* Ex. 61 at 1 (https://www.verizon.com/business/resources/T8c/whitepapers/new-way-to-work-new-way-to-mobilize-microsoft-teams.pdf) ("Through [Defendants'] strategic relationship with Microsoft, Verizon is the first US operator to offer Microsoft Teams Phone Mobile, delivered as Verizon Mobile for Microsoft Teams."). VMMT includes a mobile-integrated unified communications service that allows a user's native mobile number from Verizon to be fully integrated with Microsoft Teams, supporting advanced telecommunication functions, such as: calling, voicemail, and other communication features across both the mobile network and Teams interface. *See* Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/). VMMT enable Verizon Customers to make and receive live voice calls over the public switched telephone network (PSTN) using their Verizon-provisioned mobile number, while using the Microsoft Teams application as a unified communication interface. *Id.* at 3 ("Make and receive calls outside your organization via the smartphone's keypad or Teams endpoints using a single Verizon business-provided mobile number."); *see* Ex. 22 (https://learn.microsoft.com/en-us/previous-versions/microsoft-365/solutions/deploy-voice).

180. VMMT's method for supporting real-time communications includes Defendants' operation and control of the ACG cloud platform as an MNO gateway. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). Alternatively, Defendants' carrier-side ISC GW/SBC, together with associated IMS/application-server gateway functionality, is separately accused as the claimed MNO gateway. Microsoft retired ACG on October 30, 2025, and directed customers of VMMT to transition to another Microsoft Teams Direct Routing-certified SBC before that date. *See* Ex. 25 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/prepare-to-deploy). Post-retirement, one or more Microsoft Teams Direct Routing-certified SBCs were deployed to replace ACG as the accused MNO gateway because they perform the SIP gateway and interconnection functions between Defendants' telecommunications network and Microsoft Teams. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow). Alternatively, Defendants' carrier-side ISC GW/SBC remains an additional accused MNO gateway because it separately performs the claimed gateway functions. Where ACG (including MCP), a certified SBC, or Microsoft Phone System is the entity that queries the information repository and generates the message described below, the claimed "gateway of the MNO" that receives and uses the retrieved device identifier is Defendants' IMS S-CSCF, ISC gateway, SBC, or other

core network elements serving the called or calling subscriber. Where ACG or a certified SBC is instead treated as the claimed gateway of the MNO, the message is generated by Microsoft Phone System or MCP at Defendants' direction. Each of these mappings is pleaded in the alternative.

181. VMMT receives at least one message communicated from a user device of a first social network user where the message initiates real-time telecommunication. For example, the gateway infrastructure includes a communication interface, the Mobile Control Point ("MCP") that receives SIP (Session Initiation Protocol) signaling messages relating to real-time communication requests. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) ("MCP then adds X-MS-FMC headers and updates the signaling to divert the call into the Microsoft Phone System through [ACG]."). MCP is "an IMS Application Server" that "queries MPS [Microsoft Phone System] to determine whether the caller or callee is eligible for Teams Phone Mobile services," and a "call from a Teams client has an X-MS-FMC header with the value APP." Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point). Alternatively, Defendants direct and control the SBCs provided by the certified SBC vendors to perform ACG's former gateway functions that receive at least one message relating to a real-time communication request. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-

teams/index.html) (showing Sansay's SBC's SIP signaling and media flow); Ex. 10 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/enterprise-calling/) (explaining that VMMT includes "a Session Border Controller as a Service product that can be configured by Verizon for secure interconnectivity and needed translation for SIP connectivity between existing systems and Microsoft Teams Phone.").

182. VMMT's first social network user is an initiator of the real-time telecommunication. Each Microsoft Teams user who is enabled for VMMT has a corresponding Verizon voice plan, and Defendants associate that user's VMMT identity with a specific Verizon-provisioned mobile telephone number as part of the provisioning process for the service. *See* Ex. 17 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/); Ex. 49 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/operator-connect/) (showing Verizon directly manages provisioning and assigns organization phone numbers through Microsoft Teams Admin).

183. Alternatively, the SIP signaling messages received by the ISC GW or the certified SBC vendors include fields that identify the Microsoft Teams application as the source of the communication request through the standard SIP headers (e.g., User-Agent, P-Asserted-Identity) and proprietary Microsoft extensions that reflect the app identity. *See* Ex. 45 (http://transnexus.com/whitepapers/sip-invite-header-fields/). These headers may include identifiers like Microsoft Teams or specific client metadata that distinguish Teams from other clients or services. For example, in Direct Routing, Microsoft Phone System populates the History-Info header with entries in which "the Direct Routing FQDN (sip.pstnhub.microsoft.com) [is] set as the host part of the URI," and populates transfer-related headers with the Microsoft Teams "Tenant ID," thereby identifying Microsoft Teams as the

application from which the request was initiated. Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip); Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (The "header, included within SIP INVITE messages, provides a mechanism to replace an existing early or established dialog with a different dialog. The different dialog can be used for Microsoft Teams services such as call parking, attended call transfer and various conferencing features."); Ex. 57 (Ribbon SBC Edge R9.0 SIP Interface Interop with Identity Hub Interoperability Guide) ("The SIP client initiates a request by routing the SIP INVITE request for a call to the Identity Hub service FQDN. The INVITE request must include a FROM header to identify the calling party and a To header to identify the called party.").

184. Defendants provide, direct, and control an information repository that stores a device identifier for a second social network user that is an intended recipient of the real-time telecommunication and that has a plan with a mobile network operator (MNO) such as Verizon. VMMT creates a mapping between a Teams user (social network user), the user's Account Name or other Azure AD/Entra ID identifiers (user's identities), and a mobile number (device identifier). Defendants store this mapping in VMMT's telephony configuration, and it is accessible to Defendants via its API integrations. *See* Ex. 41 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/provisioning-platform); Ex. 42 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/integrate-with-provisioning-api); Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) ("Using [MCP] in [ACG] MCP is an IMS Application Server that queries the Teams Phone Mobile Consultation API to determine

whether the call involves a Teams Phone Mobile Subscriber. MCP then adds X-MS-FMC headers and updates the signaling to divert the call into the Microsoft Phone System through [ACG].”). Microsoft Phone System stores, for each Teams user, the telephone number assigned to that user, and for incoming calls “the Request-URI is used to match the phone number to a user” by performing a “reverse number lookup within the tenant.” Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip). For Teams Phone Mobile, the operator provides “eligible SIM-enabled phone numbers” that are assigned “to licensed Teams users.” Ex. 63 (https://learn.microsoft.com/en-us/microsoftteams/operator-connect-mobile-plan).

185. VMMT’s device identifier for the second social network user is stored in the information repository in response to a registration process that authenticates the second social network user and specifies the device identifier for the second social network user. The onboarding process for VMMT includes user authentication through Azure/Entra ID, ensuring that the Teams user is a verified organizational user. *See* Ex. 43 (https://learn.microsoft.com/en-us/entra/fundamentals/what-is-entra) (“Microsoft Entra ID . . . is a cloud-based identity and access management service that provides authentication, policy enforcement, and protection for users, devices, apps, and resources.”). This process stores the mapping in Defendants’ repository after authenticating the user.

186. In response to receiving the at least one message, Defendants provide, direct, and control VMMT to query the information repository and retrieve from the information repository the device identifier for the second social network user. This process is facilitated through a real-time query of an internal mapping repository that links Teams identities (e.g., Account Name or other Azure AD/Entra ID identifiers) with Verizon-

provisioned mobile numbers. *See* Ex. 44 (https://learn.microsoft.com/en-us/entra/identity/saas-apps/verizon-provisioning-tutorial) (explaining attribute mapping for Verizon provisioning). For example, MCP "queries MPS to determine if a call involves a Teams Phone Mobile subscriber," determining "the served subscriber for a mobile originating call from the URI in the P-Served-User header or P-Asserted-Identity header," and if MPS cannot "provide a number to use to route the call, MCP can't update the signaling." Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point).

187. Thus, in response to receiving the call-initiation message, the stored association between the Teams user and the user's telephone number is queried and the telephone number used to route the call is retrieved. For example, when a user places a call in Microsoft Teams, a signaling message with device identifiers (such as a SIP INVITE or API-triggered call setup) is transmitted to VMMT. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). VMMT then uses the Microsoft Teams identity of the called party embedded in the received message to perform a look-up within the internal mapping system and retrieve the mobile number (device identifier) from the second social network user. *See* Ex. 44 (https://learn.microsoft.com/en-us/entra/identity/saas-apps/verizon-provisioning-tutorial) (showing user attribute mappings synchronized from Microsoft Entra ID to Verizon).

188. Alternatively, Defendants direct and control and put into use the SBC delivered by the certified SBC vendors to perform and provide ACG's former gateway functions that query the information repository and retrieve from the information repository the device identifier for the second social network user in response to receiving the at least one SIP

message. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow); Ex. 10 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/enterprise-calling/) (explaining that VMMT includes "a Session Border Controller as a Service product that can be configured by Verizon for secure interconnectivity and needed translation for SIP connectivity between existing systems and Microsoft Teams Phone.").

189. VMMT generates at least one message for communication to at least one gateway of the MNO where the message includes the device identifier for the second social network user retrieved from the information repository. Following the repository lookup, VMMT formats and transmits call setup information including the resolved mobile number to its MNO infrastructure, such as an IMS GW. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). For example, VMMT generates SIP messages to the MNO gateway which contain or are associated with device identifiers for the second social network user (e.g., the user receiving the call), including a phone number or Teams-specific device tokens that are used for routing and policy applications. *See* Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip).

190. Alternatively, the SIP signaling messages received by the ISC GW include fields that identify the Microsoft Teams application as the source of the communication request. This is done, for example, through standard SIP headers (e.g., User-Agent, P-Asserted-Identity) and proprietary Microsoft extensions that reflect the app identity. *See* Ex. 45 (http://transnexus.com/whitepapers/sip-invite-header-fields/) ("The P-Asserted-Identity header field is an important SIP header used among trusted SIP entities (typically intermediaries) to carry the identity of the user sending a SIP message as it was verified by authentication. . . . The User-Agent header field contains information about the UAC originating the request. It describes the source device that generated the SIP INVITE.").

191. VMMT's device identifier for the second social network user is used by the at least one gateway of the MNO in carrying out the real-time telecommunication. Defendants' MNO gateway uses that device identifier to route the call to, and alert, the called subscriber's device. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) ("MCP then adds X-MS-FMC headers and updates the signaling to divert the call into the Microsoft Phone System through [ACG]."). Verizon formats and transmits call setup information including the resolved mobile number to its MNO infrastructure, such as an "IMS Core" gateway, or the "Enterprise Core" when configured through a certified SBC vendor. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) (showing the call setup information transmitting to the IMS Core); Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing an SBC's Enterprise Core).

192. VMMT uses the device identifier in its gateway of the MNO in initiating a phone call and the device identifier serves as the destination address in the call signaling process, and the Verizon network uses it to ring the correct SIM-based device. *See* Ex. 44 (https://learn.microsoft.com/en-us/entra/identity/saas-apps/verizon-provisioning-tutorial).

193. Defendants' direct infringement of the '152 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty.

194. Defendants have had knowledge of the '152 Patent, or were willfully blind to its existence, before the filing of this Complaint, as alleged in the section above titled "Defendants' Knowledge of Telesocial and Telesocial's Patents," and in any event have had knowledge of the '152 Patent and of their infringement since at least the filing of this Complaint. Defendants' continued actions are willful, blatant, and in egregious disregard for Telesocial's patent rights.

195. Defendants' willful infringement is causing damage and irreparable injury to Telesocial, and Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

196. Defendants have acted recklessly, willfully, wantonly, and deliberately to engage in acts of infringement of the '152 Patent, justifying an award to Telesocial of increased damages under 35 U.S.C. § 284.

197. Telesocial is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Defendants' direct infringement of the '152 Patent.

**COUNT VIII – INDIRECT INFRINGEMENT OF THE ’152 PATENT**

198. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

199. As set forth with respect to Count VII, at least the Accused Technologies, including VMMT, directly infringe the ’152 Patent, and Defendants direct and control Microsoft’s performance of the claimed method steps.

200. In the alternative, and to the extent the performance of the claimed method steps by Microsoft or the certified SBC vendors is not attributable to Defendants, Microsoft and the certified SBC vendors directly infringe the ’152 Patent by performing the claimed method steps, and Defendants have actively, knowingly, and intentionally induced and continue to induce that direct infringement of the ’152 Patent under 35 U.S.C. § 271(b) by third parties, for example, by partnering with, enabling, directing, and encouraging Microsoft to perform the method steps as part of VMMT, knowing that those acts constitute infringement of the ’152 Patent. As alleged above, Defendants have known of the ’152 Patent, or were willfully blind to it, since before the filing of this Complaint and from their receipt of this Complaint, and Defendants have known, or were willfully blind to the fact, that the induced acts constitute infringement. For example, Defendants support and encourage all the infringing functionalities discussed above through the resources on their website. *See, e.g.*, Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/).

201. Defendants instruct, encourage and enable Microsoft to perform each of these core method steps of VMMT, including through their partnership and integration agreements, joint provisioning and onboarding, direct communication, trainings, reference materials,

technical specifications, user guides, promotional materials, support contracts, sales calls, release notes, webinars, guidelines, videos, manuals, and white papers, all of which are intended to enable and encourage the infringing performance of the claimed method within VMMT. These are affirmative, active steps taken with the specific intent that Microsoft perform the claimed method steps in the infringing manner described above. *See* https://www.youtube.com/watch?v=1pYyQgNPnWw (user guide video for VMMT); Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (reference materials and FAQ for VMMT); Ex. 58 (https://ribboncommunications.com/products/service-provider-products/session-border-controllers-service-providers#) (providing resources such as white paper, guide, datasheet, and webinar for users of Ribbon's SBC).

202. Defendants' websites promote the Accused Technologies, for example VMMT, and describe the benefits of these products. *See* Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (showing benefits and user video guide); *id.* (showing benefits of VMMT); Ex. 59 (https://www.sansay.com/wp-content/uploads/2013/05/Sansay_VSXi_Session-Controller_9_2013.pdf) (describing the benefits of Sansay's SBC); Ex. 60 (https://www.oracle.com/a/ocom/docs/industries/communications/enterprise-session-border-controller-ds.pdf) (data sheet on the advantages and benefits of Oracle's SBC).

203. Defendants are also liable for contributory infringement of the '152 Patent pursuant to 35 U.S.C. § 271(c) by knowing or being willfully blind to the fact that they are contributing to infringement of the '152 Patent by third parties such as Microsoft and the certified SBC vendors, in the alternative as set forth above, by offering to sell and selling in the

United States the Accused Technologies. Each of these components is a material or apparatus for use in practicing the method claimed in the ‘152 Patent and constitutes a material part of the claimed invention. The Accused Technologies are not a staple articles or commodities of commerce suitable for substantial non-infringing use. This is because the core functionality of the Accused Technologies, as described in the example above, infringes the ’152 Patent when it is used. Because there is no other use for the Accused Technologies and because they always infringe when their core functionality is used, there is no substantial non-infringing use for the Accused Technologies.

204. Defendants’ indirect infringement of the ’152 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty. Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by the Court.

205. Pursuant to 35 U.S.C. §§ 283, 284, and 285, Telesocial is entitled to injunctive relief, damages, and attorney’s fees and costs.

**COUNT IX – DIRECT INFRINGEMENT OF THE ’562 PATENT**

206. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

207. Defendants have infringed and continue to directly infringe at least Claim 1 of the ’562 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and offering for sale in the United States, Texas, and this District, at least the Accused Technologies without the permission, consent, authorization, or license of Telesocial.

208. Defendants’ infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

209. Defendants' direct infringement includes, but is not limited to, the use, sale, and offer for sale of products and services incorporating Telesocial's technology covered by the '562 Patent, including the Accused Technologies, thereby performing the steps of the claimed methods. Defendants directly infringe the claimed methods because Defendants perform, or direct and control the performance of, each claimed step using apparatus and systems that Defendants own, assemble, operate, store, and control, including the Accused Technologies. In particular, the Accused Technologies provide a set of applications that are used in regular business functions, which allow users to interact with multiple information forms across multiple types of computing devices and platforms, including various smartphones, tablets, laptops, and desktop computers.

210. Alternatively, Defendants directly infringe the claimed methods under 35 U.S.C. § 271(a), because Defendants direct and control the performance of Microsoft's ACG and the SBCs delivered by third-party certified SBC vendors within VMMT. Defendants condition participation in and the benefits of the Accused Technologies on the performance of the claimed steps and establish the manner and timing of that performance.

211. By way of example of Defendants' infringement of the '562 Patent, the Accused Technologies meet all the limitations of Claim 1 of the '562 Patent.

212. For example, VMMT performs and provides a method for supporting real-time telecommunication. VMMT supports real-time telecommunications over Defendants' mobile network. Defendants partnered with Microsoft to offer VMMT. *See* Ex. 61 at 1 (https://www.verizon.com/business/resources/T8c/whitepapers/new-way-to-work-new-way-to-mobilize-microsoft-teams.pdf) ("Through [Defendants'] strategic relationship with Microsoft, Verizon is the first US operator to offer Microsoft Teams Phone Mobile, delivered as Verizon

Mobile for Microsoft Teams."). VMMT includes a mobile-integrated unified communications service that allows a user's native mobile number from Verizon to be fully integrated with Microsoft Teams, supporting advanced telecommunication functions, such as: calling, voicemail, and other communication features across both the mobile network and Teams interface. *See* Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/). VMMT enable Verizon Customers to make and receive live voice calls over the public switched telephone network (PSTN) using their Verizon-provisioned mobile number, while using the Microsoft Teams application as a unified communication interface. *See* Ex. 18 at 3 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) ("Make and receive calls outside your organization via the smartphone's keypad or Teams endpoints using a single Verizon business-provided mobile number."); Ex. 22 (https://learn.microsoft.com/en-us/previous-versions/microsoft-365/solutions/deploy-voice).

213. VMMT's method for supporting real-time communications includes Defendants' operation and control of the ACG cloud platform as an MNO gateway. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). Alternatively, Defendants' carrier-side ISC GW/SBC, together with associated IMS/application-server gateway functionality, is separately accused as the claimed MNO gateway. Microsoft retired ACG on October 30, 2025, and directed customers of VMMT to transition to another Microsoft Teams Direct Routing-certified SBC before that date. *See* Ex. 25 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/prepare-to-deploy). Post-retirement, one or more Microsoft Teams Direct Routing-certified SBCs were deployed to replace ACG as the accused

MNO gateway because they perform the SIP gateway and interconnection functions between Defendants' telecommunications network and Microsoft Teams. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow).

214. Alternatively, Defendants' carrier-side ISC GW/SBC remains an additional accused MNO gateway because it separately performs the claimed gateway functions. Where ACG (including MCP), a certified SBC, or Microsoft Phone System is the entity that queries the information repository and generates the message described below, the claimed "gateway of the MNO" that receives and uses the retrieved device identifier is Defendants' IMS S-CSCF, ISC gateway, SBC, or other core network elements serving the called or calling subscriber. Where ACG or a certified SBC is instead treated as the claimed gateway of the MNO, the message is generated by Microsoft Phone System or MCP at Defendants' direction. Each of these mappings is pleaded in the alternative.

215. VMMT receives at least one message communicated from a user device of a first social network user, the message initiating a real-time telecommunication. For example, the gateway infrastructure includes a communication interface, the Mobile Control Point ("MCP") that receives SIP (Session Initiation Protocol) signaling messages relating to real-time communication requests. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) ("MCP then adds

X-MS-FMC headers and updates the signaling to divert the call into the Microsoft Phone System through [ACG].”). MCP is “an IMS Application Server” that “queries MPS [Microsoft Phone System] to determine whether the caller or callee is eligible for Teams Phone Mobile services,” and a “call from a Teams client has an X-MS-FMC header with the value APP.” Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point). Alternatively, Defendants direct and control and put into use the SBC delivered by the certified SBC vendors to perform ACG’s former gateway functions that receive at least one message relating to a real-time communication request. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC’s SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon’s SBC’s SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay’s SBC’s SIP signaling and media flow); Ex. 10 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/enterprise-calling/) (explaining that VMMT includes “a Session Border Controller as a Service product that can be configured by Verizon for secure interconnectivity and needed translation for SIP connectivity between existing systems and Microsoft Teams Phone.”).

216. VMMT’s message includes the first social network user as an initiator of the real-time telecommunication and has a plan with an MNO (Mobile Network Operator). Each Microsoft Teams user who is enabled for VMMT has a corresponding Verizon voice plan (MNO), and Defendants associate that user’s Microsoft Teams identity with a specific Verizon-provisioned mobile telephone number as part of the provisioning process for the

service. *See* Ex. 17 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/); Ex. 49 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/operator-connect/) (showing Verizon directly manages provisioning and assigns organization phone numbers through Microsoft Teams Admin).

217. Alternatively, the SIP signaling messages received by the ISC GW or the certified SBC vendors include fields that identify the Microsoft Teams application as the source of the communication request through the standard SIP headers (e.g., User-Agent, P-Asserted-Identity) and proprietary Microsoft extensions that reflect the app identity. *See* Ex. 45 (http://transnexus.com/whitepapers/sip-invite-header-fields/). These headers may include identifiers like Microsoft Teams or specific client metadata that distinguish Teams from other clients or services. For example, in Direct Routing, Microsoft Phone System populates the History-Info header with entries in which "the Direct Routing FQDN (sip.pstnhub.microsoft.com) [is] set as the host part of the URI," and populates transfer-related headers with the Microsoft Teams "Tenant ID," thereby identifying Microsoft Teams as the application from which the request was initiated. Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip); Ex. 31 at 43 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (The "header, included within SIP INVITE messages, provides a mechanism to replace an existing early or established dialog with a different dialog. The different dialog can be used for Microsoft Teams services such as call parking, attended call transfer and various conferencing features."); Ex. 57 (Ribbon SBC Edge R9.0 SIP Interface Interop with Identity Hub Interoperability Guide) ("The SIP client initiates a request by routing the SIP INVITE request

for a call to the Identity Hub service FQDN. The INVITE request must include a FROM header to identify the calling party and a To header to identify the called party.").

218. Defendants provide, direct, and control an information repository that stores a device identifier for the first social network user. VMMT creates a mapping between a Teams user (social network user) identities (e.g., Account Name or other Azure AD/Entra ID identifiers) and a mobile number (device identifier). *See* Ex. 44 (https://learn.microsoft.com/en-us/entra/identity/saas-apps/verizon-provisioning-tutorial) (explaining attribute mapping for Verizon provisioning). Defendants store this mapping in the VMMT's telephony configuration, and it is accessible to Defendants via its API integrations. *See* Ex. 41 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/provisioning-platform); Ex. 42 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/integrate-with-provisioning-api); Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) ("Using [MCP] in [ACG]. MCP is an IMS Application Server that queries the Teams Phone Mobile Consultation API to determine whether the call involves a Teams Phone Mobile Subscriber. MCP then adds X-MS-FMC headers and updates the signaling to divert the call into the Microsoft Phone System through [ACG]."). Microsoft Phone System stores, for each Teams user, the telephone number assigned to that user, and for incoming calls "the Request-URI is used to match the phone number to a user" by performing a "reverse number lookup within the tenant." Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip). For Teams Phone Mobile, the operator provides "eligible SIM-enabled phone numbers" that are assigned

"to licensed Teams users." Ex. 63 (https://learn.microsoft.com/en-us/microsoftteams/operator-connect-mobile-plan).

219. VMMT's device identifier for the first social network user is stored in the information repository in response to a registration process that authenticates the first social network user and specifies the device identifier for the first social network user. Verizon manages and assigns "organization phone numbers directly through Microsoft Teams Admin Center." Ex. 49 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/operator-connect/). The onboarding process for VMMT includes user authentication through Azure/Entra ID, ensuring that the first Microsoft Teams user is a verified organizational user. *See* Ex. 43 (https://learn.microsoft.com/en-us/entra/fundamentals/what-is-entra). VMMT associates the first user's identity with a mobile number and stores the mapping in VMMT's repository after authenticating the user. Ex. 49 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/operator-connect/).

220. Defendants provide, direct, and control VMMT to query the information repository and retrieves from the information repository the device identifier for the first social network user in response to receiving the at least one message. VMMT's gateway infrastructure includes a communication interface, the MCP, that receives SIP signaling messages relating to real-time communication requests, including calls originating from a Microsoft Teams client and directed to a Verizon-provisioned mobile number, and calls originating from a Verizon mobile subscriber directed to a Teams user. *See* Ex. 17 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/). The ISC GW receives SIP INVITE messages and associated real-time communication signaling from

Microsoft Teams via ACG. *Id.* These messages initiate calls that originate from a Teams client and are directed to a Verizon mobile number. VMMT's SIP messages can include information about the Microsoft Teams user that is making or is an intended recipient of the requested communication and that has a plan with Verizon, including a device identifier and additional data. The SIP messages received by the ISC GW include federated identity information associated with a Microsoft Teams user. Alternatively, Defendants direct and control and put into use the SBC delivered by the certified SBC vendors to perform ACG's former gateway functions that receive at least one message relating to a real-time communication request. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow); Ex. 10 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/enterprise-calling/) (explaining that VMMT includes "a Session Border Controller as a Service product that can be configured by Verizon for secure interconnectivity and needed translation for SIP connectivity between existing systems and Microsoft Teams Phone.").

221. VMMT uses the social network user identity embedded in the message to perform a lookup in its internal mapping system to retrieve the mobile number (device identifier) from the information repository. For example, MCP "queries MPS to determine if a call involves a Teams Phone Mobile subscriber," determining "the served subscriber for a

mobile originating call from the URI in the P-Served-User header or P-Asserted-Identity header," and if MPS cannot "provide a number to use to route the call, MCP can't update the signaling." Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point). Thus, in response to receiving the call-initiation message, the stored association between the Teams user and the user's telephone number is queried and the telephone number used to route the call is retrieved.

222. VMMT generates at least one message for communication to at least one gateway of the MNO, where the information includes the device identifier for the social network user retrieved from the information repository. Following the repository lookup, VMMT formats and transmits call setup information including the resolved mobile number to its MNO infrastructure, such as an IMS gateway. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). The transfer of information to the MNO gateway includes device identifier information, including phone number or Teams-specific device tokens that are used for routing and policy applications. *See* Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip). VMMT retrieves the device identifier (e.g., the user's mobile number) from the repository and communicates it to at least one gateway of the MNO to complete the call leg setup. The SIP messages received by the ISC GW include federated device identifier information associated with a Microsoft Teams user provisioned through Microsoft 365 and authenticated using OAuth identity tokens that are embedded or mapped into SIP headers. *See* Ex. 42 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/integrate-with-provisioning-api). The SIP signaling messages also contain or are associated with device identifiers, including a phone number or Teams-specific device tokens

that are used for routing and policy application. Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip).

223. Alternatively, the SIP signaling messages received by the ISC GW include fields that identify the Microsoft Teams application as the source of the communication request. This is done, for example, through standard SIP headers (e.g., User-Agent, P-Asserted-Identity) and proprietary Microsoft extensions that reflect the app identity. *See* Ex. 45 at 2-3 (http://transnexus.com/whitepapers/sip-invite-header-fields/) ("The P-Asserted-Identity header field is an important SIP header used among trusted SIP entities (typically intermediaries) to carry the identity of the user sending a SIP message as it was verified by authentication. . . . The User-Agent header field contains information about the UAC originating the request. It describes the source device that generated the SIP INVITE.").

224. Alternatively, Defendants direct and control and put into use the SBC delivered by the certified SBC vendors to perform ACG's former gateway functions which includes communicating information, such as SIP messages, to at least one gateway of the MNO, where the information includes the device identifier for the social network user retrieved from the information repository. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow).

225. VMMT uses the Microsoft Teams user's device identifier for the first social network user in carrying out the real-time communication to at least one MNO gateway. VMMT uses the MNO gateway, whether in the form of a SIP proxy, IMS gateway, or other core network function, with the retrieved mobile number to terminate the call to the user's mobile device over the Verizon LTE or 5G network. *See* Ex. 44 (https://learn.microsoft.com/en-us/entra/identity/saas-apps/verizon-provisioning-tutorial). The device identifier serves as the destination address in the call signaling process, and VMMT use it to ring the correct SIM-based device. *See* Ex. 50 (https://learn.microsoft.com/en-us/azure/communication-services/concepts/telephony/direct-routing-sip-specification).

226. Defendants' direct infringement of the '562 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty.

227. Defendants have had knowledge of the '562 Patent, or were willfully blind to its existence, before the filing of this Complaint, as alleged in the section above titled "Defendants' Knowledge of Telesocial and Telesocial's Patents," and in any event have had knowledge of the '562 Patent and of their infringement since at least the filing of this Complaint. Defendants' continued actions are willful, blatant, and in egregious disregard for Telesocial's patent rights.

228. Defendants' willful infringement is causing damage and irreparable injury to Telesocial, and Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

229. Defendants have acted recklessly, willfully, wantonly, and deliberately to engage in acts of infringement of the '562 Patent, justifying an award to Telesocial of increased damages under 35 U.S.C. § 284.

230. Telesocial is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Defendants' direct infringement of the '562 Patent.

**COUNT X – INDIRECT INFRINGEMENT OF THE '562 PATENT**

231. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

232. As set forth with respect to Count IX, at least the Accused Technologies directly infringe the '562 Patent, and Defendants direct and control at least Microsoft's performance of the claimed method steps.

233. In the alternative, and to the extent the performance of the claimed method steps by Microsoft or the certified SBC vendors is not attributable to Defendants, Microsoft and the certified SBC vendors directly infringe the '562 Patent by performing the claimed method steps, and Defendants have actively, knowingly, and intentionally induced and continue to induce that direct infringement of the '562 Patent under 35 U.S.C. § 271(b) by third parties, for example, by partnering with, enabling, directing, and encouraging Microsoft to perform the method steps as part of the Accused Technologies, knowing that those acts constitute infringement of the '562 Patent. As alleged above, Defendants have known of the '562 Patent, or were willfully blind to it, since before the filing of this Complaint and from their receipt of this Complaint, and Defendants have known, or were willfully blind to the fact, that the induced acts constitute infringement. For example, Defendants support and encourage all the infringing functionalities discussed above through the resources on their website. *See, e.g.*, Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/).

234. Defendants instruct, encourage and enable Microsoft to perform each of these core method steps of the Accused Technologies, for example VMMT, including through their partnership and integration agreements, joint provisioning and onboarding, direct communication, trainings, reference materials, technical specifications, user guides, promotional materials, support contracts, sales calls, release notes, webinars, guidelines, videos, manuals, and white papers, all of which are intended to enable and encourage the infringing performance of the claimed method within VMMT. These are affirmative, active steps taken with the specific intent that Microsoft perform the claimed method steps in the infringing manner described above. *See* https://www.youtube.com/watch?v=1pYyQgNPnWw (user guide video for VMMT); Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (reference materials and FAQ for VMMT); Ex. 58 (https://ribboncommunications.com/products/service-provider-products/session-border-controllers-service-providers#) (providing resources such as white paper, guide, datasheet, and webinar for users of Ribbon's SBC).

235. Defendants' websites promote the Accused Technologies, for example VMMT, and describe the benefits of these products. *See* Ex. 18 https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (showing benefits and user video guide); *id.* (showing benefits of VMMT); Ex. 59 (https://www.sansay.com/wp-content/uploads/2013/05/Sansay_VSXi_Session-Controller_9_2013.pdf) (describing the benefits of Sansay's SBC); Ex. 60 (https://www.oracle.com/a/ocom/docs/industries/communications/enterprise-session-border-controller-ds.pdf) (data sheet on the advantages and benefits of Oracle's SBC).

236. Defendants are also liable for contributory infringement of the ’152 Patent pursuant to 35 U.S.C. § 271(c) by knowing or being willfully blind to the fact that they are contributing to infringement of the ’562 Patent by third parties such as Microsoft and the certified SBC vendors, in the alternative as set forth above, by offering to sell and selling in the United States the Accused Technologies. Each of these components is a material or apparatus for use in practicing the method claimed in the ‘562 Patent and constitutes a material part of the claimed invention. The Accused Technologies are not staple articles or commodities of commerce suitable for substantial non-infringing use. This is because the core functionality of the Accused Technologies, as described in the example above, infringes the ’562 Patent when it is used. Because there is no other use for the Accused Technologies and because they always infringe when their core functionality is used, there is no substantial non-infringing use for the Accused Technologies.

237. Defendants’ indirect infringement of the ’562 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty. Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by the Court.

238. Pursuant to 35 U.S.C. §§ 283, 284, and 285, Telesocial is entitled to injunctive relief, damages, and attorney’s fees and costs.

**COUNT XI – DIRECT INFRINGEMENT OF THE ’110 PATENT**

239. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

240. Defendants have infringed and continue to directly infringe at least Claim 1 of the ’110 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and offering for

sale in the United States, Texas, and this District, at least the Accused Technologies without the permission, consent, authorization, or license of Telesocial.

241. Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

242. Defendants' direct infringement includes, but is not limited to, the use, sale, and offer for sale of products and services incorporating Telesocial's technology covered by the '110 Patent, including the Accused Technologies, thereby performing the steps of the claimed methods. Defendants directly infringe the claimed methods because Defendants perform, or direct and control the performance of, each claimed step using apparatus and systems that Defendants own, assemble, operate, store, and control, including the Accused Technologies. In particular, the Accused Technologies provide a set of applications that are used in regular business functions, which allow users to interact with multiple information forms across multiple types of computing devices and platforms, including various smartphones, tablets, laptops, and desktop computers.

243. Alternatively, Defendants directly infringe the claimed methods under 35 U.S.C. § 271(a), because Defendants direct and control the performance of Microsoft's ACG and the SBCs delivered by third-party certified SBC vendors within VMMT. Defendants condition participation in and the benefits of the Accused Technologies on the performance of the claimed steps and establish the manner and timing of that performance.

244. By way of example of Defendants' infringement of the '110 Patent, the Accused Technologies meet all the limitations of Claim 1 of the '110 Patent.

245. For example, VMMT provides a method for supporting real-time telecommunication. Defendants partnered with Microsoft to offer Customers VMMT. *See* Ex.

61 at 1 (https://www.verizon.com/business/resources/T8c/whitepapers/new-way-to-work-new-way-to-mobilize-microsoft-teams.pdf) ("Through [Defendants'] strategic relationship with Microsoft, Verizon is the first US operator to offer Microsoft Teams Phone Mobile, delivered as Verizon Mobile for Microsoft Teams.").

246. VMMT includes a mobile-integrated unified communications service that allows a user's native mobile number from Verizon to be fully integrated with Microsoft Teams, supporting advanced telecommunication functions, such as: calling, voicemail, and other communication features across both the mobile network and Teams interface. *See* Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/). VMMT enables Verizon Customers to make and receive live voice calls over the public switched telephone network (PSTN) using their Verizon-provisioned mobile number, while using the Microsoft Teams application as a unified communication interface. *Id.* at 3 ("Make and receive calls outside your organization via the smartphone's keypad or Teams endpoints using a single Verizon business-provided mobile number."); *see* Ex. 22 (https://learn.microsoft.com/en-us/previous-versions/microsoft-365/solutions/deploy-voice).

247. VMMT's method for supporting real-time communications includes Defendants' operation and control of the ACG cloud platform as an MNO gateway. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). Alternatively, Defendants' carrier-side ISC GW/SBC, together with associated IMS/application-server gateway functionality, is separately accused as the claimed MNO gateway. Microsoft retired ACG on October 30, 2025, and directed customers of VMMT to transition to another Microsoft Teams Direct Routing-certified SBC before that date. *See* Ex. 25 (https://learn.microsoft.com/en-us/previous-

versions/azure/communications-gateway/prepare-to-deploy). Post-retirement, one or more Microsoft Teams Direct Routing-certified SBCs were deployed to replace ACG as the accused MNO gateway because they perform the SIP gateway and interconnection functions between Defendants' telecommunications network and Microsoft Teams. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow).

248. Alternatively, Defendants' carrier-side ISC GW/SBC remains an additional accused MNO gateway because it separately performs the claimed gateway functions. Where ACG (including MCP), a certified SBC, or Microsoft Phone System is the entity that queries the information repository and generates the message described below, the claimed "gateway of the MNO" that receives and uses the retrieved device identifier is Defendants' IMS S-CSCF, ISC gateway, SBC, or other core network elements serving the called or calling subscriber. Where ACG or a certified SBC is instead treated as the claimed gateway of the MNO, the message is generated by Microsoft Phone System or MCP at Defendants' direction. Each of these mappings is pleaded in the alternative.

249. Defendants provide, direct, and control an information repository that stores a device identifier associated with a particular device of a social network user having a plan with a mobile network operator (MNO). VMMT relies on a federated identity and telephony repository maintained across the Accused Technologies. VMMT creates a mapping between a

Teams user (social network user) identities (e.g., Account Name or other Azure AD/Entra ID identifiers) and a mobile number (device identifier). Defendants store this mapping in VMMT's telephony configuration, and it is accessible to Defendants via its API integrations. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect); Ex. 41 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/provisioning-platform); Ex. 42 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/integrate-with-provisioning-api).

250. When a user is onboarded, Defendants associate their Microsoft Teams identity with a Verizon-provided mobile number, storing a "device identifier" (the mobile number) tied to a specific device and MNO plan. This repository acts as the source for identity resolution and call routing during communications initiated from Microsoft Teams. The mobile number is embedded in the MNO's infrastructure and billing system, confirming that the repository specifically supports users who have a plan with an MNO (Verizon). *See, e.g.*, Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect) ("Using [MCP] in [ACG]. MCP is an IMS Application Server that queries the Teams Phone Mobile Consultation API to determine whether the call involves a Teams Phone Mobile Subscriber. MCP then adds X-MS-FMC headers and updates the signaling to divert the call into the Microsoft Phone System through [ACG]."). Microsoft Phone System stores, for each Teams user, the telephone number assigned to that user, and for incoming calls "the Request-URI is used to match the phone number to a user" by performing a "reverse number lookup within the tenant." Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip). For Teams

Phone Mobile, the operator provides "eligible SIM-enabled phone numbers" that are assigned "to licensed Teams users." Ex. 63 (https://learn.microsoft.com/en-us/microsoftteams/operator-connect-mobile-plan).

251. VMMT has a device identifier for the social network user stored in the information repository in response to a registration process that authenticates the social network user. Verizon manages and assigns "organization phone numbers directly through Microsoft Teams Admin Center." Ex. 49 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/operator-connect/). The onboarding process for VMMT includes user authentication through Azure/Entra ID, ensuring that the Teams user is a verified organizational user. *See* Ex. 43 (https://learn.microsoft.com/en-us/entra/fundamentals/what-is-entra). VMMT associates the user's identity with a mobile number and stores the mapping in VMMT's repository after authenticating the user. *See* Ex. 49 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/operator-connect/).

252. VMMT receives at least one message related to real-time communication involving the social network user (the VMMT user), and in response, Defendants provide, direct, and control VMMT to query the information repository and retrieve the device identifier from the information repository for the social network user. VMMT's gateway infrastructure includes a communication interface, the MCP, that receives SIP (Session Initiation Protocol) signaling messages relating to real-time communication requests, including calls originating from a Microsoft Teams client and directed to a Verizon-provisioned mobile number, and calls originating from a Verizon mobile subscriber directed to a Teams user. *See* Ex. 17 (https://www.verizon.com/support/verizon-mobile-for-ms-teams-legal/). VMMT's ISC GW

receives SIP INVITE messages and associated real-time communication signaling from Microsoft Teams via ACG. *Id.* These messages initiate calls that originate from a Teams client and are directed to a Verizon mobile number. VMMT's SIP messages can include information about a Microsoft Teams user that is making or is an intended recipient of the requested communication and that has a plan with Verizon, including a device identifier and additional data. The SIP messages received by the ISC GW include federated identity information associated with a Microsoft Teams user.

253. Alternatively, Defendants direct and control and put into use the SBC delivered by the certified SBC vendors to perform ACG's former gateway functions that receive at least one message relating to a real-time communication request. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow); Ex. 10 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/enterprise-calling/) (explaining that VMMT includes "a Session Border Controller as a Service product that can be configured by Verizon for secure interconnectivity and needed translation for SIP connectivity between existing systems and Microsoft Teams Phone.").

254. VMMT uses the social network user identity embedded in the message to perform a lookup in its internal mapping system to retrieve the mobile number (device identifier) from the information repository. For example, MCP "queries MPS to determine if a

call involves a Teams Phone Mobile subscriber," determining "the served subscriber for a mobile originating call from the URI in the P-Served-User header or P-Asserted-Identity header," and if MPS cannot "provide a number to use to route the call, MCP can't update the signaling." Ex. 28 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/mobile-control-point). Thus, in response to receiving the call-initiation message, the stored association between the Teams user and the user's telephone number is queried and the telephone number used to route the call is retrieved.

255. VMMT communicates information to at least one gateway of the MNO, where the information includes the device identifier for the social network user retrieved from the information repository. Following the repository lookup, VMMT formats and transmits call setup information including the resolved mobile number to its MNO infrastructure, such as an IMS gateway. *See* Ex. 27 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/interoperability-operator-connect). The transfer of information to the MNO gateway includes device identifier information, including phone number or Teams-specific device tokens that are used for routing and policy applications. *See* Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip). VMMT retrieves the device identifier (e.g., the user's mobile number) from the repository and communicates it to at least one gateway of the MNO to complete the call leg setup. The SIP messages received by the ISC GW include federated device identifier information associated with a Microsoft Teams user provisioned through Microsoft 365 and authenticated using OAuth identity tokens that are embedded or mapped into SIP headers. *See* Ex. 42 (https://learn.microsoft.com/en-us/previous-versions/azure/communications-gateway/integrate-with-provisioning-api). The SIP signaling messages also contain or are associated with device

identifiers, including a phone number or Teams-specific device tokens that are used for routing and policy application. *See* Ex. 48 (https://learn.microsoft.com/en-us/microsoftteams/direct-routing-protocols-sip).

256. Alternatively, the SIP signaling messages received by the ISC GW include fields that identify the Microsoft Teams application as the source of the communication request. This is done, for example, through standard SIP headers (e.g., User-Agent, P-Asserted-Identity) and proprietary Microsoft extensions that reflect the app identity. Ex. 45 at 2-3 (http://transnexus.com/whitepapers/sip-invite-header-fields) ("The P-Asserted-Identity header field is an important SIP header used among trusted SIP entities (typically intermediaries) to carry the identity of the user sending a SIP message as it was verified by authentication. . . . The User-Agent header field contains information about the UAC originating the request. It describes the source device that generated the SIP INVITE.").

257. Alternatively, Defendants direct and control and put into use the SBC delivered by the certified SBC vendors to perform ACG's former gateway functions which includes communicating information, such as SIP messages, to at least one gateway of the MNO, where the information includes the device identifier for the social network user retrieved from the information repository. *See* Ex. 31 (https://www.oracle.com/a/otn/docs/msftteamsdirectroutingwithoraclesbc22-08-22.pdf) (showing Oracle SBC's SIP signaling and media flow); Ex. 33 (https://ribboncommunications.com/solutions/service-provider-solutions/cloud-and-edge/microsoft-solutions/direct-routing-microsoft-teams-calling) (showing Ribbon's SBC's SIP signaling and trunking); Ex. 40 (https://www.sansay.com/solutions/microsoft-teams/index.html) (showing Sansay's SBC's SIP signaling and media flow).

258. VMMT uses the Microsoft Teams user's device identifier for the social network user in carrying out the real-time communication to at least one MNO gateway MNO in initiating a phone call. VMMT uses the MNO gateway, whether in the form of a SIP proxy, IMS gateway, or other core network function, with the retrieved mobile number to terminate the call to the user's mobile device over the Verizon LTE or 5G network. *See* Ex. 44 (https://learn.microsoft.com/en-us/entra/identity/saas-apps/verizon-provisioning-tutorial). The device identifier serves as the destination address in the call signaling process, and VMMT uses it to ring the correct SIM-based device. *See* Ex. 50 (https://learn.microsoft.com/en-us/azure/communication-services/concepts/telephony/direct-routing-sip-specification).

259. Defendants' direct infringement of the '110 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty.

260. Defendants have had knowledge of the '110 Patent, or were willfully blind to its existence, before the filing of this Complaint, as alleged in the section above titled "Defendants' Knowledge of Telesocial and Telesocial's Patents," and in any event have had knowledge of the '110 Patent and of their infringement since at least the filing of this Complaint. Defendants' continued actions are willful, blatant, and in egregious disregard for Telesocial's patent rights.

261. Defendants' willful infringement is causing damage and irreparable injury to Telesocial, and Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

262. Defendants have acted recklessly, willfully, wantonly, and deliberately to engage in acts of infringement of the '110 Patent, justifying an award to Telesocial of increased damages under 35 U.S.C. § 284.

263. Telesocial is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285 for Defendants' direct infringement of the '110 Patent.

**COUNT XII – INDIRECT INFRINGEMENT OF THE '110 PATENT**

264. Telesocial repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

265. As set forth with respect to Count XI, at least the Accused Technologies, including VMMT, directly infringes the '110 Patent, and Defendants direct and control Microsoft's performance of the claimed method steps.

266. In the alternative, and to the extent the performance of the claimed method steps by Microsoft or the certified SBC vendors is not attributable to Defendants, Microsoft and the certified SBC vendors directly infringe the '110 Patent by performing the claimed method steps, and Defendants have actively, knowingly, and intentionally induced and continue to induce that direct infringement of the '110 Patent under 35 U.S.C. § 271(b) by third parties, for example, by partnering with, enabling, directing, and encouraging Microsoft to perform the method steps as part of the Accused Technologies, knowing that those acts constitute infringement of the '110 Patent. As alleged above, Defendants have known of the '110 Patent, or were willfully blind to it, since before the filing of this Complaint and from their receipt of this Complaint, and Defendants have known, or were willfully blind to the fact, that the induced acts constitute infringement. For example, Defendants support and encourage all the infringing functionalities discussed above through the resources on their website. *See, e.g.*, Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/).

267. Defendants instruct, encourage and enable at least Microsoft to perform each of these core method steps of the Accused Technologies, for example VMMT, including through their partnership and integration agreements, joint provisioning and onboarding, direct communication, trainings, reference materials, technical specifications, user guides, promotional materials, support contracts, sales calls, release notes, webinars, guidelines, videos, manuals, and white papers, all of which are intended to enable and encourage the infringing performance of the claimed method within VMMT. These are affirmative, active steps taken with the specific intent that Microsoft perform the claimed method steps in the infringing manner described above. *See* https://www.youtube.com/watch?v=1pYyQgNPnWw (user guide video for VMMT); Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (reference materials and FAQ for VMMT); Ex. 58 (https://ribboncommunications.com/products/service-provider-products/session-border-controllers-service-providers#) (providing resources such as white paper, guide, datasheet, and webinar for users of Ribbon's SBC).

268. Defendants' websites promote the Accused Technologies, for example VMMT, and describe the benefits of these products. *See* Ex. 18 (https://www.verizon.com/business/products/voice-collaboration/microsoft-teams/unified-mobile/) (showing benefits and user video guide); *id.* (showing benefits of VMMT); Ex. 59 (https://www.sansay.com/wp-content/uploads/2013/05/Sansay_VSXi_Session-Controller_9_2013.pdf) (describing the benefits of Sansay's SBC); Ex. 60 (https://www.oracle.com/a/ocom/docs/industries/communications/enterprise-session-border-controller-ds.pdf) (data sheet on the advantages and benefits of Oracle's SBC).

269. Defendants are also liable for contributory infringement of the ’110 Patent pursuant to 35 U.S.C. § 271(c) by knowing or being willfully blind to the fact that they are contributing to infringement of the ’110 Patent by third parties such as Microsoft and the certified SBC vendors, in the alternative as set forth above, by offering to sell and selling in the United States the Accused Technologies. Each of these components is a material or apparatus for use in practicing the method claimed in the ’110 Patent and constitutes a material part of the claimed invention. The Accused Technologies are not staple articles or commodities of commerce suitable for substantial non-infringing use. This is because the core functionality of the Accused Technologies, as described in the example above, infringes the ’110 Patent when it is used. Because there is no other use for the Accused Technologies and because they always infringe when their core functionality is used, there is no substantial non-infringing use for the Accused Technologies.

270. Defendants’ indirect infringement of the ’110 Patent has injured and continues to injure Telesocial in an amount to be proven at trial, but not less than a reasonable royalty. Telesocial will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by the Court.

271. Pursuant to 35 U.S.C. §§ 283, 284, and 285, Telesocial is entitled to injunctive relief, damages, and attorney’s fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Telesocial prays for judgment and relief as follows:

(A) An entry of judgment holding that Defendants have infringed and are infringing the Asserted Patents, have induced and are inducing infringement of the Asserted Patents, and

have contributorily infringed and continue to contribute to infringement of the Asserted Patents;

(B) An entry of judgment in favor of Telesocial finding willful infringement as to the Asserted Patents;

(C) A preliminary and permanent injunction against Defendants and their officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing, directly or indirectly, the Asserted Patents, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

(D) An award to Telesocial of damages to be proven at trial to compensate Telesocial for Defendants' infringement of the Asserted Patents that will account for infringement up to trial based on the relevant information and financials produced, where said damages will be no less than a reasonable royalty;

(E) An award to Telesocial of increased damages under 35 U.S.C. § 284 based on, *inter alia*, Defendants' willful infringement of the Asserted Patents;

(F) A finding that this case is "exceptional" and an award to Telesocial of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(G) An accounting of all infringing sales and revenues from the first date of infringement of the Asserted Patents;

(H) Post judgment interest and prejudgment interest; and

(I) Such further and other relief as the Court may deem proper and just.

Respectfully submitted,

Dated: October 22, 2026

By: */s/ Elizabeth L. DeRieux*
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
ederieux@capshawlaw.com

Paul J. Andre (CA SBN 196585)
Lisa Kobialka (CA SBN 191404)
BROWN RUDNICK LLP
333 Twin Dolphin Drive
Redwood Shores, CA 94065
Telephone: (669) 469-1800
Facsimile: (669) 469-1801
paul.andre@brownrudnick.com
lisa.kobialka@brownrudnick.com

Aaron M. Frankel (NY SBN 4025888)
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
aaron.frankel@brownrudnick.com

*Attorneys for Plaintiff*
Telesocial LLC